**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **JANE DOE,** | **Case No. 3:23-cv-00965** |
| *Plaintiff*, | |
| **v.** | **JURY DEMAND** |
| **WILLIAM B. LEE**, Governor of the State of Tennessee, *in his official capacity*; **DAVID RAUSCH**, Director of the Tennessee Bureau of Investigation, *in his official capacity*, | **District Judge Trauger** |
| | **Magistrate Judge Newbern** |
| *Defendants*. | |

<u>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**</u>

Plaintiff Jane Doe hereby submits the following for her Amended[1] Complaint against

Defendants William B. Lee and David B. Rausch in their official capacities:

## I.    INTRODUCTION

Whether any procedural protections are due depends on the extent to which an
individual will be 'condemned to suffer grievous loss.' The question is not merely
the 'weight' of the individual's interest, but whether the nature of the interest is
one within the contemplation of the 'liberty or property' language of the
Fourteenth Amendment.
*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (quotation omitted)

The registration and reporting duties imposed on convicted sex offenders are
comparable to the duties imposed on other convicted criminals during periods of
supervised release or parole. And there can be no doubt that the "widespread
public access,"[…] to this personal and constantly updated information has a
severe stigmatizing effect. In my judgment, these statutes unquestionably affect a
constitutionally protected interest in liberty.

*Smith v. Doe*, 538 U.S. 84, 112 (2003) (Stevens, J. concurring).

---

[1] Pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, Ms. Doe hereby exercises her
right to amend her Complaint as a matter of course within 21 days of service of Defendants' Rule
12(b) Motion on October 3, 2023.

1

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

1.      For the past seven years, Jane Doe has borne the stigma of being publicly labeled a "violent sexual offender" despite having never been charged with, let alone convicted of, sexual misconduct of any sort.

2.      In 2011, she entered a plea of "guilty" to the federal crime of aiding and abetting kidnapping after she, two other women, and a man drove a car across state lines with the man's infant child in the back seat under threat by the man who had beaten and raped her and threatened to kill her son unless she complied.

3.      Five years later, she was informed that the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004, Tenn. Code Ann. §40-39-201, *et seq*, ("the Act") required her to register not only as a sexual offender but as a "violent sexual offender."

4.      The Act defines a sexual offender as "a person who has been convicted in this state of committing a sexual offense or has another qualifying conviction." *See* Tenn. Code Ann. § 40-39-202(19).

5.      The Act defines "sexual offense" as "***the commission of any act that***, on or after November 1, 1989*, **constitutes the criminal offense of*** [26 enumerated offenses under Tennessee state law]." *See* Tenn. Code. Ann. § 40-39-202(20) (emphasis added).

6.      The Act defines "violent sexual offender" as "a person who has been convicted in this state of committing a violent sexual offense or has another qualifying conviction". *See* Tenn. Code Ann. § 40-39-202(30).

7.      The Act defines a "violent sexual offense" as "***the commission of any act that constitutes the criminal offense of*** [26 enumerated offenses including inchoate versions of offenses]." *See* Tenn. Code Ann. § 40-39-202(31) (emphasis added).

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

8.     As a "violent sex offender," Ms. Doe is subject to a lifetime of burdensome restrictions that limit nearly every aspect of her life, including where she lives, where she works, her relationship with her family and son, and her ability to reform her life and reintegrate into society.

9.     Anyone viewing the Tennessee Sex Offender Registry on the internet, much less reading the site's prominent warnings about protecting the public from "convicted sex offenders," would naturally assume that those listed, including Jane Doe, were convicted of a crime involving sex. *See* Merriam-Webster Dictionary (2022) (defining "sex offender" as "a person who has been convicted of a crime involving sex"). Ms. Doe's TSOR profile literally states "This sex offender was convicted of a *sex crime* in another state that would be classified as a Violent Sexual Offense if it occurred in Tennessee." The claim that Ms. Doe was convicted of a "sex crime" is utterly false.

10.     Ms. Doe was never convicted or charged of a crime involving sex.

11.     Over the years, Ms. Doe made numerous efforts to explain to the federal court formerly overseeing her federal supervised release, her former federal probation officer, and the Tennessee Bureau of Investigation that these restrictions are inappropriate and that the label of "violent sex offender" is grossly misleading as applied to Ms. Doe. Her efforts have not been successful.

12.     Ms. Doe now files the instant suit under 42 U.S.C. §1983 seeking to lift the misleading, stigmatizing label and onerous conditions of being a "violent sex offender" and to undo the injustice of being labeled a "violent sex offender" while having never committed any kind of sexual misconduct.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, the First and Fourteenth Amendments to the United States Constitution, and 42 U.S.C. §1983.

14.      Ms. Doe's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§2201-2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Honorable Court.

15.     Venue is proper in this court pursuant to 28 U.S.C. §1391(b).

## III.     PARTIES

16.     Plaintiff Jane Doe resides in Greeneville, Tennessee. She remains under the supervision of the Tennessee Bureau of Investigation pursuant to the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004. Tenn. Code Ann. §40-39-201, *et seq*.

17.     It is beyond dispute that Ms. Doe has never been convicted of, nor alleged to have committed, any crimes involving sexual conduct – let alone sexual *misconduct*.  Nevertheless, she was forced to register as a violent sexual offender and is subject to a lifetime of highly onerous restrictions intended for violent sex offenders.

18.     Defendant Bill Lee is the Governor of the State of Tennessee. He is named as a Defendant in his official capacity.

19.     Article III, § 1 of the Tennessee Constitution vests the supreme executive power of the state in the governor. Article III, §10 further provides that the governor shall take care that applicable federal and state laws are faithfully executed. As the executive, Governor Lee is responsible for the enforcement of laws in this state and for the administration of all state departments, including the Tennessee Bureau of Investigation (the "TBI").

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

20.     Defendant David Rausch is the Director of the TBI. He is named as a Defendant in his official capacity.

21.     Under the Act, TBI is charged with maintaining the state's sex offender registry ("SOR"). *See* Tenn. Code Ann. § 40-39-204(a) &(d); Tenn. Code Ann. §40-39-206(a); Tenn. Code Ann. § 40-39-202(22). TBI is also tasked with enforcing many of the Act's key provisions, including maintaining and publishing a centralized record system, *see* Tenn. Code Ann. § 40-39-204(a); designing, printing, and distributing registration forms, *see* Tenn. Code Ann. § 40-39-205(a); keeping offenders informed of the registration, verification, tracking requirement, and sanctions under the Act, *see* Tenn. Code Ann. §40-39-205(f); notifying law enforcement when an offender is not in compliance with the Act, *see* Tenn. Code Ann. § 40-39-206(b); determining whether offenses committed in a jurisdiction outside Tennessee require a person to register, *see* Tenn. Code Ann. §40-39-202(1); determining whether a registrant is a "sexual offender" or "violent sexual offender" and therefore the length of their registry requirement, see Tenn. Code Ann. §40-39-202(19),(20) (30); and, processing offender requests to be removed from the registry, *see* Tenn. Code. Ann. §40-39-207(a)(1).

## IV.     STATEMENT OF FACTS

### *Background of the "Qualifying" Offense*

22.     Ms. Doe and her Co-Defendant Brooke Stumbo had been friends since they were in elementary school together.

23.     At the time these events took place, Ms. Doe was 21 years old. Her only criminal convictions before this incident included three misdemeanors in Greene County: a failure to appear in 2009[2], writing bad checks for less than $500 in 2009, and simple possession in 2010.

---

[2] The underlying charges for which Ms. Doe was to appear were all dismissed.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

24.     At the time these events took place, the other Co-Defendant, David Jackson, was 35 years old.

25.     Jackson had 23 criminal history points – nearly doubling the 13-point ceiling under the United States Sentencing Guidelines.  He had been convicted of 25 offenses in 17 years including numerous violent offenses and firearms offenses in separate instances.  Jackson's criminal history included four separate previous instances of using a motor vehicle as an instrumentality of a crime.  Notably, this event was *not even the first time* that Jackson had been charged with placing a baby in danger while the child was a passenger in a motor vehicle he was operating.

26.     Before the events leading to this incident, Ms. Doe had encountered Jackson only one time when he sold drugs to her aunt while Ms. Doe was at her aunt's house.  Ms. Doe's aunt warned her about Jackson stating that he was a killer.

27.     Sometime in early June 2010, Stumbo contacted Doe and proposed that the two of them get together and get high.  Stumbo was in possession of a vehicle and a substantial amount money and drugs.  Ms. Doe agreed.

28.     Unbeknownst to Ms. Doe, Stumbo had recently been in Miami, Florida with Co-Defendant Jackson where she abandoned him to return to Tennessee in the car he rented which was full of his drugs and his money.

29.     After two weeks, Stumbo told Ms. Doe that they needed to get rid of the vehicle because Jackson was back in town and looking for her.  They left the car at an old church.

30.     Jackson had contact with Ms. Doe's cousin and bribed him with drugs for information on Ms. Doe and Stumbo's location.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

31. On June 28, 2010, Ms. Doe and Stumbo were with Ms. Doe's cousin when Jackson pulled up on them in the car Stumbo and Ms. Doe had left at the church. Jackson showed Ms. Doe and Stumbo pictures of their children on his phone and told them he would kill the children unless they got into the car with him. Ms. Doe and Stumbo complied.

32. Jackson took them to a residence on Asheville Highway in Greenville, Tennessee where he brutally and repeatedly assaulted and raped both Ms. Doe and Stumbo. Jackson was in possession of multiple firearms, which he used to threaten and assault Ms. Doe and Stumbo. At one point, Jackson continuously stomped his booted foot onto Ms. Doe's face, breaking her jaw.

33. On July 10, 2010, the mother of the minor victim in the case – an infant – contacted Jackson to meet her parents at Wendy's in Greenville, TN to pick up the child. Jackson took Ms. Doe and Stumbo along with another girl under Jackson's control – a minor from Cuba that Jackson had nicknamed "Bunny" – with him to the Wendy's and picked up the child.

34. The next day, Stumbo and Bunny were allowed to drive into town, but Ms. Doe was kept at the residence with Jackson and the baby.

35. A man that Ms. Doe knew to be a friend of her brother's came by the residence to purchase drugs from Jackson. The man recognized Ms. Doe and clearly noticed her broken jaw and her general condition. Ms. Doe asked him for help and for him to get her brother. The man agreed and left.

36. Jackson then received a call from the mother of his child and the two argued. He stated to her, "No, you'll never see him again." Jackson hung up the phone and instructed Ms. Doe to get the baby ready to go shopping.

37. When Ms. Doe was putting the baby into the car seat, Stumbo and Bunny pulled back up at the residence. Moments later, another female pulled up to the residence and began

screaming. Ms. Doe did not know at the time that this was the mother of Jackson's child. Jackson approached the woman and drug her out of the car and physically beat her in the middle of the road before taking off in her vehicle and leaving her there. Jackson then called Bunny's phone and instructed them all to meet him at the interstate with his child. Stumbo drove the car with Bunny in the passenger seat and Ms. Doe in the back seat with the baby. The car was the same white Chrysler Sebring that Stumbo had brought up from Florida that they had left at the church.

38.     There were multiple routes to the interstate from the residence. Ms. Doe persuaded Stumbo to take the route that passed by Camp Creek Market on Greystone Road where her mother had worked off and on for many years. Ms. Doe also knew others worked there. Ms. Doe planned to try and call the police.

39.     At the Camp Creek Market, Ms. Doe's mother was not there, but she described their situation to the cashier, Clara Hewett, including the threats on her own children's' lives by Jackson. Ms. Doe instructed Ms. Hewett to take down their plate number and call 911 to pull them over, which the Ms. Hewett did. An off-duty police officer was present and attempted to keep Ms. Doe from leaving. Ms. Doe emphasized that Jackson would kill her children if she did not comply, and the officer allowed her to leave.

40.     When they reached the interstate, they noticed the police had a vehicle pulled over that was the same make, model, and color as their vehicle. They were not intercepted by police. They met Jackson, who drove the car to Miami.

41.     On July 13, 2010, law enforcement arrested Stumbo, Bunny, Ms. Doe, and Jackson at a motel in Miami. Ms. Doe told several of the officers "thank you" believing that they had saved her life. Ms. Doe *thought* her nightmare was over.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

42. The Government characterized Ms. Doe as a "victim" of Jackson's "assaults with threats of death and bodily harm" and whom Jackson placed in "at high risk of serious bodily harm." *See* Exhibit A: *United States v. David Jackson*, No. 2:10-cr-74-001, Doc. No. 117, United States Sentencing Memorandum (E.D. Tenn. Aug. 12, 2011). Jackson was described by the Government as "a full-time criminal whose major life activity is drugs, ***the manipulation and abuse of women*** and children, and violence." *Id.* at pp. 3 (emphasis added).

43. Both Ms. Doe and Stumbo testified against Jackson at trial as did the off-duty police officer and Clara Hewett.

### *Plea, Classification, and SOR*

44. After Ms. Doe's arrest on the federal warrant on July 13, 2010, she was denied pretrial release on September 28, 2010, and ordered detained pending trial.

45. Up to that point, Ms. Doe had previously only served minimal time in custody on three occasions related to her misdemeanor criminal history in Greene County: once for 2 days, once for 10 days and once for 30 days. The impact of the local law enforcement's time credit system on the *actual* time she served on those sentences is not known, but it likely reduced the time spent incarcerated.

46. After *six months* of being in custody, Ms. Doe entered a plea agreement and pleaded guilty on January 13, 2011, to aiding and abetting kidnapping, in violation of 18 U.S.C. §§1201 and 2, in the United States District Court for the Eastern District of Tennessee at Greeneville, Tennessee.

47. Because Jackson was the parent of the minor child, he could not be charged with kidnapping pursuant to 18 U.S.C. § 1201(a). Instead, he was charged with carjacking and interstate transportation of a stolen motor vehicle. After a jury trial, Jackson was convicted of

9

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

those charges.  Upon information and belief, Jackson has never required to register as a sex offender.

48.     On June 6, 2011, pursuant to her plea, Ms. Doe was sentenced to 72 months in prison followed by three years of supervised release.

49.     Her plea agreement did not state that Ms. Doe would have to register as a sex offender.

50.     The Presentence Investigation Report did not mention or envision that she would have to register as a sex offender. And the original judgment did not list registration as a sex offender as a condition of her supervised release. To the contrary, the box next to the pre-printed condition that she "shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer," which directs to "[c]heck if applicable," was unchecked.

51.     Near the end of her term of incarceration for the kidnapping offense, in 2015, the Bureau of Prisons ("BOP") released Ms. Doe to a halfway house to serve the remainder of her prison term. While there, she left without permission and was subsequently charged and convicted of escape and sentenced to an additional 8 months' incarceration to be followed by one year of supervised release, to be served concurrent to the supervised release for the kidnapping offense.

52.     In preparation for Ms. Doe's re-release onto supervision in 2016, her United States Probation Officer – Cara Widner – was informed by TBI that Ms. Doe would need to register as a sex offender because she had pled guilty to kidnapping.

53.     Widner sought an advisory opinion from Assistant U.S. Attorney, Helen Smith— the prosecuting attorney in Ms. Doe's case.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

54.     On May 6, 2016, AUSA Smith wrote a memorandum to Widner stating that it was never the Government's intent for Ms. Doe to register as a sex offender. *See* Exhibit B: AUSA Smith Memo. Smith further did not believe Ms. Doe was required to register as a sex offender – let alone a violent sex offender – under the Act because the statutory elements of the federal offense for which Ms. Doe was convicted substantially differed from those of the state crimes of kidnapping and aggravated kidnapping as defined by Tenn. Code Ann. § 39-13-303, 304. *Id.*

55.     The same day, Widner forwarded the Smith Memo to TBI General Counsel Jeanne Broadwell asking Broadwell "if this changes anything regarding the original determination" that Ms. Doe would be required to register as a sex offender. *See* Exhibit C: Widner Email. After referring to her own comparison of the state and federal elements for kidnapping, Broadwell simply concluded, "I still believe that SORNA requires registration." *Id.*

56.     As discussed below, this example of an utter lack of due process is not a fluke or anomaly in the operation of the Act. This is the way the Act is designed to operate. Defendants are essentially convicting individuals, including Ms. Doe and any other similarly situated to her, of a new and – in many cases including Ms. Doe's case -- a *heightened* offense without due process.

57.     Shortly thereafter, Ms. Doe was released and registered as a violent sex offender and an "offender against children" with TBI. She feared she would be criminally prosecuted for failing to register as a sex offender—a separate felony offense.

58.     Under the Act, violent sex offenders must register in person with their local Sheriff's Department every quarter of the year while non-violent sex offenders must only register once each year. Despite being charged with the same offense, based on exactly the same conduct, and ultimately pleading guilty to the very same offense as Ms. Doe, Co-Defendant Brooke Stumbo

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

was not classified as a "violent sex offender" requiring lifetime registration. Instead, Stumbo was classified as a "sex offender." *See* Exhibit D: Stumbo Initial Registration.

59.     In early 2017, Ms. Doe unfortunately suffered a relapse into drug addiction. On September 9, 2017, her supervised release was revoked, and she was sentenced to serve 8 months' incarceration.

60.     During and arising from these revocation proceedings, Ms. Doe asked the District Court overseeing the revocation to enter an order that would relieve her of the requirement that she register as a sex offender. While the District Court stated in its revocation judgment that it was not requiring Ms. Doe to register with the state sex offender registration agency, it opined that it did not have the authority to enter an order that would legally prevent *the state* from requiring her to register as a sex offender under the Act. *See* Exhibit E: 2017 Revocation Judgment.

61.     Upon release from custody after her revocation, Ms. Doe went to the Greene County Sheriff's Department to complete her SOR registration. Green County Sex Offender Compliance Officer Angie Weems – like AUSA Helen Smith and Probation Officer Cara Widner – believed that the requirement of Ms. Doe to register *at all* was a mistake because she had never been charged or even accused of sexual misconduct.

62.     Officer Weems contacted the office of general counsel for TBI to protest Ms. Doe's registration. Officer Weems was told that Ms. Doe would have to register as a violent sex offender. Officer Weems referred to the revocation judgment on which the district court noted that Ms. Doe would not be required to register at all. TBI still maintained that Ms. Doe would have to register and register as a "violent sex offender."

63.     Ms. Doe then sought relief from her conviction, and thus having to register as a sex offender, in the District Court through a motion for post-conviction relief pursuant to 28 U.S.C.

§2255, filed in May 2017. She argued that her guilty plea was unknowing and involuntary because she was not aware that she would be required to register as a violent sex offender under the Act. Officer Weems testified on behalf of Ms. Doe in these proceedings.

64. In 2019, while her §2255 motion remained pending in the District Court and facing continued hardship in complying with the Act, Ms. Doe petitioned TBI to be removed from the registry.

65. On June 21, 2019, TBI denied Ms. Doe's request for removal from the registry. *See* Exhibit F: TBI Denial Letter. Their letter stated that her conviction constituted a sexually violent offense under the Act, which required lifetime registration, and that the victim being under the age of twelve also required lifetime registration. *Id.*

66. On February 25, 2020, the Court denied her §2255 motion—finding her plea knowing and voluntary despite lacking any mention of having to register as a sex offender—and declined to issue a certificate of appealability.

67. On February 22, 2021, the Sixth Circuit Court of Appeals affirmed the District Court's denial of Ms. Doe's § 2255 Motion to Vacate.

68. On August 19, 2022, ACLU-TN Legal Director Stella Yarbrough delivered a request "for immediate removal" outlining the legal reasons why Ms. Doe does not belong on the Tennessee Sex Offender Registry and demanding reclassification. *See* Exhibit G: ACLU 2022 Letter. Defendants never replied to that request, thereby again violating Ms. Doe's substantive and procedural due process rights and other constitutional rights detailed herein.

69. On October 8, 2023, Ms. Doe addressed a request for a classification hearing to TBI General Counsel Jeanne Broadwell and delivered that request to counsel for Defendants. *See* Exhibit H: Classification Hearing Request.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

70. On October 17, 2023, Defendants, through Broadwell, denied Ms. Doe's request for a classification hearing thereby again violating Ms. Doe's due process rights. *See* Exhibit I: Hearing Denial.

71. Both the 2019 denial letter and the 2023 denial letter bear the name and office of both (and only) Defendants Lee and Rausch. *See* Exhibit H; Exhibit I.

72. Defendants have never informed Ms. Doe directly of which qualifying Tennessee offense her federal conviction constitutes.

73. Since registering in 2016, Ms. Doe has never been found in violation of any of the Act's onerous regulations.

74. Ms. Doe has been sober and drug-free for three years.

### *The Act: History, Operation, and Treatment*

75. In 1994, the United States Congress enacted, and the President signed into law, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program which directed the Attorney General to establish guidelines for state programs requiring persons convicted of crimes against minors or crimes of sexual violence to register a current address with state law enforcement officials. 42 U.S.C. § 14071. States were given three years to implement a registration program or lose certain federal funding. 42 U.S.C. § 14071(f)(1).

76. Tennessee enacted the Sexual Offender Registration and Monitoring Act ("SORMA") on May 10, 1994. 1994 Tenn. Pub. Acts, ch. 976. Before that time, Tennessee did not require anyone to register as a sex offender for any purpose.

77. SORMA required TBI to "establish, maintain, and update a centralized record system of sexual offender registration and verification information." 1994 Tenn. Pub. Acts, ch. 976 § 7(a). Reported information included a registrant's full name, date and place of birth, social

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

security number, driver's license number, probation or parole officer information, convicted offenses, place of employment, current address and other information per TBI regulation. *Id*. at § 4.

78. Registration and reporting under SORMA were conducted by mailing forms to and from TBI, not in person. All registrant information was accessible only by law enforcement unless further disclosure was "deemed necessary to protect the public concerning a specific sexual offender." *Id*. at §§ 4, 7(c). Registrants had ten days to report (by mailed form) changes to personal information to TBI. *Id*. at § 4.

79. Under SORMA, a registrant could petition a court for relief from the Act's requirements ten years after release from supervision. *Id*. at § 8(a). There was no lifetime registration requirement.

80. In 1997, SORMA was modified to include non-sexual offenses committed against minors—namely, false imprisonment, aggravated kidnapping, and especially aggravated kidnapping. 1997 Tenn. Pub. Acts, ch. 466 §1. The amendment specifically excluded parents who committed these crimes against their own children. *Id*.

81. SORMA was amended and expanded, gradually imposing stricter requirements that applied to more people and more conduct, in the ensuing years. *See Ms. Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *2 (M.D. Tenn. Nov. 9, 2017) (listing amendments to SORMA). In 2004, it was repealed and replaced by the current Act, the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("the Act"). 2004 Tenn. Pub. Laws, ch. 921.

82. Under the Act, sexual offenders can petition TBI (instead of a court as under SORMA) for removal after ten years. Tenn. Code. Ann. 40-39-207(b), (g). Violent sexual

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

offenders, however, are required to comply with the Act for the remainder of their lives. Tenn. Code Ann. § 40-39-207(g)(2)(B); *see also* 2004 Tenn. Pub. Acts ch. 921 §1 (creating Tenn. Code Ann. §40-39-207(g)(2)(B), formerly 207(g)(1)(B)). This lifetime registration requirement for violent sex offenders was first introduced as a 2000 amendment to SORMA but was re-adopted and expanded upon in the Act. *Compare* 2000 Tenn. Pub. Acts, ch. 997 §1-2 *with* 2004 Tenn. Pub. Acts ch. 921 §1.

83.     The Act, therefore, provides for the removal of individuals from the registry who have *actually* been convicted of *sexual* offenses – albeit those designated either nonviolent or was not committed against a child – while individuals who have never committed a sexual offense of any kind are required to publicly register as sex offenders for their rest of their lives.

84.     Officer Weems discussed one example in her jurisdiction of an individual who was convicted of a sexual offense for molesting his granddaughter but was only classified as a "sex offender" and will be eligible for future removal. Ms. Doe, on the other hand, will never be eligible for removal from the sex offender registry despite never even being accused of sexual misconduct. This situation is a profound perversion of both the public interest and the law purportedly designed to further it.

85.     In 2011, at the time of Ms. Doe's plea, if TBI considered Ms. Doe's federal offense to possibly result in a conviction for either false imprisonment under Tenn. Code Ann. §39-13-202 or kidnapping under Tenn. Code Ann. §39-13-303, Ms. Doe would have been required to register as a sexual offender and could have petitioned for removal after ten years. However, if TBI considered her conviction to be equivalent to aggravated kidnapping under Tenn. Code Ann. §39-

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

13-304 or especially aggravated kidnapping under Tenn. Code Ann. §39-13-305, Ms. Doe would have been considered a violent sexual offender for life.[3]

86. In 2014, the Act was amended to include another means of requiring lifetime registration. "Offenders against children," that is, offenders whose victims are twelve years of age or less, were also now required to register for life regardless of whether they were convicted of a sexual offense or violent sexual offense. *See* 2014 Tenn. Pub. Act ch. 770, § 2 (creating Tenn. Code Ann. §§ 40-39-202(10); 207(g)(1)(C) (2014)). This amendment applied retroactively. For Ms. Doe, this amendment either added a lifetime registration requirement or created an additional lifetime registration requirement.

87. The Act has been further amended (expanding its scope of application and burden of compliance) in the ensuing years. *See* 2014 Tenn. Pub. Acts ch. 751, § 1 (creating community notification systems); 2015 Tenn. Pub. Acts, ch. 516 §1 (forbidding registrants from being "alone" with minors); Id. §7 (requiring reporting of e-mail, social media, and message accounts and methods used to access those accounts). These amendments also applied retroactively.

---

[3] Doe was convicted of aiding and abetting a kidnapping under 18. U.S.C. §1201(a) which states:

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

> **(1)** the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;
>  […]
> shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

88.     The Tennessee Sex Offender Registry Standard Operating Procedures Manual includes an "Initial Registration" section outlining the "procedural process" for which the stated purpose is "to establish the guidelines and process in which Local Law Enforcement Agencies register convicted sexual offenders, utilizing the available resources at hand, to include the Tennessee Sex Offender Registry Single-Entry Database." Part XI of this "process" states verbatim:

> Section H – Offender Classification Information
>
> a.      Choose the offender's "status" information.
> b.      Enter any appropriate notes in the "notes" section.
> **c.      Classification is automatically assigned by the database to an offender based on the TN conviction.  If they were convicted in another state, they will be 'violent pending TBI review'.**[4]
> d.      Continue
> e.      At the "Page Summary" screen, please review all information.  If there is a mistake click "previous section" and make necessary corrections.  If not, continue.

*See* Exhibit J: TSOR SOP Excerpt at pp.1-2. (emphasis added).

89.     Clearly, Ms. Doe's classification was not automatic as seen in Paragraph 55, but it is evident from the SOP that this non-automatic, discretionary process of classification is routine for all non-Tennessee convictions.

90.     In Middle District of Tennessee Case Number 3:16-cv-02862, the Plaintiffs alleged in paragraph 61 on page 25 of their Complaint against the official predecessors of both Defendants here, "A registrant's classification is based solely on the offense of conviction.  Tenn. Code Ann. § 40-39-202(19), (20), (30) & (31) (2016)."  *See Doe v. William Haslem and Mark Gwyn*, 3:16-

---

[4] In other words, not "automatically assigned."

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

cv-02862, Doc. No. 1 (M.D. Tenn. Nov. 8, 2016). The Defendants denied that allegation. *Id.* at Doc. No. 44.

91. Paragraph 62 of that Complaint alleged, "A registrant's classification is not based on, and does not correspond to, an individualized assessment of a registrant's actual risk of re-offending or the danger any registrant poses to the public." *Id.* at Doc. No. 1. The Defendants also denied that allegation. *Id.* at Doc. No. 44.

92. Under oath during deposition in that case, Karrie Elizabeth Stanfill – an Intelligence Analyst for the Tennessee Bureau of Investigation working in the Tennessee Fusion Center which houses the SOR – engaged in the following exchange with Plaintiff's counsel regarding the aforementioned denials:

> Q: The allegation is that a registrant's classification is based solely on the offense of conviction and the statute as cited, and the answer is that defendants denied the allegations in paragraph 61. So, my question is: What factors is a registrant's classification based on besides the offense of conviction?
>
> A: The age of the victim.
>
> Q: Anything else?
>
> A: If it's an out-of-state offender it would still be based on conviction, but obviously, a different state has different laws, and they may call their specific crime something else, like Florida has sexual battery. Tennessee has sexual battery, but they're not the same, so we would have legal counsel[5] to review an out of state's [sic] to make that determination of classification. But I would say it's still based on the conviction and the age of the victim.
>
> Q: Any other factors that are used to classify whether a registrant is a sexual offender or violent sexual offender besides those two?
>
> A: Not that I recall, no.

---

[5] See ¶ 55.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

Q:      If you will look at the next paragraph 62. The allegation is that a registrant's classification is not based on and does not correspond to an individualized assessment of a registrant's actual risk of reoffending, or the danger any registrant poses to the public, and the answer is that defendants deny the allegations of paragraph 62. What individualized assessment of registrant's actual risk of reoffending is conducted under the act?

A:      When determining a classification?

Q:      Yes.

A:      I don't think that goes into effect at all when you determine a classification.

[…]

A:      If it's a Tennessee offense. If it's an out-of-state offense, we turn it over to our legal counsel[6] to review and see what it compares to in the state of Tennessee.

*See* Doc. No. 103-1 (M.D. Tenn. May 2, 2019)

93.      Six months ago, United States District Court Judge Aleta Trauger held in another case, "[I]t is difficult to imagine a policy that this court has been forced to find unconstitutional (or likely so) as many times as [the Act]." *John Does #1-#9* v. *William Lee and David Rausch*, 3:21-cv-00590, Doc. No. 134 (M.D. Tenn. Mar. 3, 2023).

94.      Relying upon its holding that the State of Michigan's version of the Act violated the Ex Post Facto Clause of the United States Constitution because it "imposed punishment" and "applied retroactively" in *Doe #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), the Sixth Circuit Court of Appeals recently noted the similarity between Michigan's Act and Tennessee's Act in holding on July 10, 2023, "As a result, much of the analysis in *Snyder* could potentially apply to the Act"

---

[6] *See* ¶ 55.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

because "Michigan's SORA is substantially analogous to Tennessee' Act in text and history."
*Magnum v. Lee*, 2023 U.S. App. LEXIS 17395, *4-5 (6th Cir. Jul. 10, 2023).

95.    Despite claims that the SOR is in the interest of public safety, Defendants are actually financially incentivized to enforce and expand the SOR.  Every registrant must pay an annual $150 registration fee.  $50 of that fee is kept by the local sheriff department administering the SOR.  $100 of the fee is sent to the TBI.  As of February 2023, there were over 22,000 registrants in Tennessee.  Meaning, the TBI receives over $2.2 million every year from registration fees alone.

96.    Moreover, SORNA mandates a 10% reduction in the annual Edward Byrne Memorial Justice Assistance Grant for a state that has failed to substantially implement SORNA. *See* Exhibit K: JAG Fact Sheet.  Since 2008, organizations including, but not limited to, many dozens of local and state agencies in Tennessee have received[7] 443 Byrne grants totaling over 175 million dollars.

97.    In 2007, the Support for Adam Walsh Act Implementation grant program was established to assist state, local, and tribal jurisdictions in developing and/or enhancing programs designed to implement the requirements of SORNA.  In 2022, TBI was awarded[8] $400,000 in SMART grant funds.

---

[7]    "Funding       Awards",      Bureau       of      Justice      Assistance,      *available       at*:
https://bja.ojp.gov/funding/awards/list?awardee=&city=&combine_awards=&field_award_status
_value=All&field_funding_type_value=All&field_served_nationally_value=All&fiscal_year=&
order=field_awardee&sort=asc&state=TN&topic=All&page=33#awards-awards-list-block-
gkgdpm1ooymuyukj (last accessed October 24, 2023).
[8] "Awards Listing", SMART: Office of Sex Offender Sentencing, Monitoring, Apprehending,
Registering, and Tracking, *available at*:
https://smart.ojp.gov/funding/awards/list?awardee=&city=&combine_awards=&field_award_sta
tus_value=All&field_funding_type_value=All&field_served_nationally_value=All&fiscal_year
=&order=field_awardee_address_administrative_area&sort=desc&state=All&topic=All&page=4
#awards-awards-list-block-gkgdpm1ooymuyukj (last accessed October 24, 2023).

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

_**Impact of the Act on Ms. Doe**_

98.     The Act's restrictions continue to affect virtually every aspect of Ms. Doe's private and public life.

99.     Namely, the Act unfairly inhibits Ms. Doe's ability to duly participate in the procedure of her classification as a sexual offender, let alone a "violent" sexual offender; be free from injury by State actions which bear no rational connection to their stated purpose; participate fully in the upbringing of her son; secure housing and employment; secure meaningful treatment for substance abuse; further her education and vocational training; and escape the stigma and reputational injury of being publicly labeled a violent sex offender.

_**Impact:  Parenting and Family Relationships**_

100.     Ms. Doe has an eleven-year-old son. Ms. Doe's mother is his legal guardian; Ms. Doe resides nearby her mother and her son and shares parenting responsibilities with her mother.

101.     Until recently, Ms. Doe resided parttime with her mother and son. However, in October of 2021, Ms. Doe's brother and his infant child moved in with Ms. Doe's mother. Under Tenn. Code Ann. §40-39-211(c)(1), Ms. Doe is prohibited from residing overnight "at a residence in which a minor resides or is present." As a result, Ms. Doe had to remove her mother's address as a secondary residence and could no longer spend the night in the same house as her son.

102.     The Act also prohibits Ms. Doe from entering any school, childcare facility, park, playground, recreation center or public athletic field even if her own son is present. Tenn. Code Ann. §40-39-211(d)(1)(A).

103.     Likewise, the Act Ms. Does not allow Ms. Doe to even "[s]tand, sit idly, whether or not the offender is in a vehicle, or remain" within 1,000 feet of any school, childcare facility,

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

public park, playground, recreation center or public athletic field. Tenn. Code Ann. § 40-39-211(d)(1)(B).

104.    Ms. Doe's son is the team manager for his school's football team. Ms. Doe cannot enter the school premises and cannot attend the football games to watch her son, despite his requests for her to do so.  She cannot take him to play at a park.

105.    Ms. Doe can only enter her son's school under the following exceptions: Ms. Doe can attend a conference with school officials if she receives prior written permission or a request from the school's principal or facility's administrator. Tenn. Code Ann. §40-39-211(d)(2)(B). She can only drop her son off at school if she provides written notice of her offender status to the school's principal. Tenn. Code Ann. § 40-39-211(d)(2)(C).

106.    Ms. Doe has not sought permission from her son's school to drop him off because she is embarrassed and feels it is misleading to disclose her status as a "violent sex offender." She fears school administrators will deny her request or otherwise retaliate against her or her family because of her status.

107.    She also fears that other parents and school faculty will learn of her status. At her son's school, when a parent enters the front office, their driver's license is displayed on a large screen that is visible to anyone in the office or walking by the office.

108.    Tennessee law requires the Department of Safety to issue a driver's license to sex offenders that "bear[s] a designation…to identify the bearer of the license or card as a sexual offender or violent sexual offender." Tenn. Code Ann. § 55-50-353.

109.    Under the Act, Ms. Doe is required to carry this driver's license. Tenn. Code. Ann. § 40-39-213. She fears displaying her license, which identifies her as a "violent sexual offender," would further subject her and her son to social stigma.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

110.    The Act has further limited Ms. Doe's ability to participate in other normal parenting and familial duties. Tenn. Code Ann. § 40-39-211(c)(1).

111.    Ms. Doe has also been unable to provide childcare for her brother's infant child, despite her brother's need for assistance. See Tenn. Code Ann §40-39-211(k) (prohibiting violent sexual offenders from being along with minors in a private area).

112.    Similarly, Ms. Doe cannot spend the night at her cousin's house for holidays or family visits because her cousin has minor children who also live at the home. *See* Tenn. Code Ann. § 40-39-211(c)(1) (prohibiting violent sex offenders whose victim was a minor from residing or staying overnight where a minor resides).

113.    She cannot supervise her son when he plays with other children at their home for any amount of time unless another adult is present. *See* Tenn. Code Ann. §40-39-211(k)(1). As a result, her son rarely if ever invites other children over to play.

114.    Ms. Doe's inability to attend school functions with her son and watch him play in the park or with other children harms her relationship with her son. He often grows upset at her absence and does not understand why she is prohibited from these activities.

*Impact:*  **Housing and Treatment for Substance Abuse**

115.    The Act's limitations on housing have made finding a place for Ms. Doe to live nearly impossible at times and have severely impaired her ability to seek residential drug treatment.

116.    The Act prohibits Ms. Doe from "establish[ing] a primary or secondary residence" within 1,000 feet of any "public school, private or parochial school, licensed day care center, other childcare facility, public park, playground, recreation center or public athletic field available for use by the general public." Tenn. Code Ann. § 40-39-211(a)(1).

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

117. When Ms. Doe was in custody in 2016, she was eligible to be released to a halfway house to seek treatment six months before the end of her sentence.

118. When the placement counselor at the prison discovered Ms. Doe was required to register as a violent sex offender, she stated the Ms. Doe was no longer eligible for early release or treatment because of the Act's strict housing requirements.

119. Ms. Doe served an additional six months in prison solely because she was required to register as a violent sex offender.

120. Since 2016, Ms. Doe has had incredible difficulty locating housing that is not within 1,000 feet of a school, park, or daycare facility.

121. She asked Angie Weems, the law enforcement personnel to whom she reports, to help her locate housing in Greeneville, Tennessee.

122. When Ms. Weems looked for low-income housing that met the Act's criteria, she told Ms. Doe that there was no housing in Greene County that met criteria.

123. TBI does not provide sex offenders with an information—such as maps delineating relevant "exclusion zones" within 1,000 feet of a school, park, or childcare facility—that could assist in determining where they are eligible to live in light of the Act's restrictions.

124. Ms. Doe now resides at her boyfriend's house which is remote and cannot receive cellphone service.

125. Ms. Doe would like to be able to live on her own, in housing that is closer to her work and other amenities in town.

***Impact*: Employment**

126. The Act bars Ms. Doe from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other childcare facility, public park, playground,

recreation center or public athletic field available for use by the general public." Tenn. Code Ann. § 40-39-211(a)(1). This geographic restriction greatly limits the number of jobs to which Ms. Doe can apply.

127.   TBI Ms. Does not provide sex offenders with any information—such as maps delineating relevant "exclusion zones" within 1,000 feet of a school, park, or childcare facility—that could assist in determining where they are eligible to work in light of the Act's restrictions.

128.   Being labeled as a "violent sex offender" has also deprived Ms. Doe of several employment opportunities.

129.   In April of 2019, Ms. Doe sought employment through Elwood Staffing, an employment service.

130.   She specifically wanted to work at the SumiRiko (SRK) factory, one of the largest employers in Greeneville, Tennessee.

131.   At the time she applied, Ms. Doe believed starting pay at SRK was $12 an hour and could increase to $16.78 after promotion.

132.   Elwood Staffing inquired about her registry status and Ms. Doe informed the company that she must register as a violent sex offender; she also supplied a copy of her criminal judgment form.

133.   Elwood Staffing informed her that she would not be employed by SRK; Ms. Doe called SRK and they confirmed that, even though they hire employees with felony convictions, they would not hire her because she was registered as a violent sex offender.

134.   In 2019, Ms. Doe also sought a job through another employment agency, A Services Group LLC (ASG). The staffing agent with whom Ms. Doe met informed Ms. Doe that

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

ASG would not be able to find her employment at any of their employers because of her violent sex offender status.

135.    Ms. Doe was also denied employment at Parkin-Hannifin Corporation, another well-paying factory in Greeneville, Tennessee.

136.    Ms. Doe estimates that she has been turned down from at least ten factory jobs because she must register as a violent sex offender.

137.    In June of 2022, Ms. Doe applied for a higher-paying job as a caregiver with Enhanced Support Services. There, she would have earned $17 an hour.

138.    Enhanced Support Services informed Ms. Doe that because of her status as a violent sex offender, Ms. Doe was ineligible for employment as a caregiver with their company.

139.    Ms. Doe eventually secured employment at Donaldson factory where she was working 40 to 56 hours a week at $15 an hour until she was fired for being on the SOR.  She was then able to secure employment at John Deere Power Products, which is regarded as the best place in Greeneville to work – until she was again fired for being on the SOR.  This cycle has repeated itself several other times.

### *Impact*:  Education and Vocational Training

140.    Ms. Doe would like to continue her education and has considered enrolling in a local community college.

141.    When Ms. Doe spoke about her education options to Ms. Angie Weems, the law enforcement officer to whom she reports, Ms. Weems informed her, that according to Ms. Weem's understanding, Ms. Doe would not be eligible to attend most community colleges as they offer onsite childcare.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

142.    Ms. Doe also considered enrolling in the Jenny Lee cosmetology school in Greeneville. The school's enrollment coordinator informed Ms. Doe that she would not be able to enroll at the school, however, because other students often bring their minor children to the school. The school did not want Ms. Doe, a registered violent sex offender, to be around other students' minor children.

### *Impact*:  Required Reporting of Personal Information and Internet Activity

143.    The Act requires Ms. Doe, as a violent sex offender, to report in person during the months of March, June, September, and December each calendar year. Tenn. Code Ann. § 40-39-204(b)(1). She must also pay a $150 fee each year. *Id*.

144.    When Ms. Doe reports, she must verify and update the following information:

(a)    Complete name and all aliases;

(b)    Date and place of birth;

(c)    Social security number;

(d)    A photocopy of a valid driver license;

(e)    Sexual offenses or violent sexual offenses for which the registrant has been convicted, the date of the offenses and the county and state of each conviction; or the violent juvenile sexual offense for which the registrant has been adjudicated delinquent, the date of the act for which the adjudication was made and the county and state of each adjudication;

(f)    Name of any current employers, length of employment, and employer's physical addresses and phone numbers;

(g)    Current physical address and length of residence at that address, including any primary or secondary residences;

(h)    Mailing address, if different from physical address;

(i)    Any vehicle, mobile home, trailer or manufactured home used or owned by Ms. Doe, including descriptions, vehicle information numbers and license tag numbers;

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

(j)     Any vessel, live aboard vessel or houseboat used by Ms. Doe, including the name of the vessel, description and all identifying numbers;

(k)     Name and address of each institution of higher education in this state where Ms. Doe is employed or is a student;

(l)     Race and gender;

(m)     Names, address and phone number of closest living relative;

(n)     Whether victims of conviction are minors or adults, the number of victims and the correct age of the victim and of the offender at the time of the offense;

(o)     Verification by TBI or Ms. Doe that TBI has received her DNA sample;

(p)     Complete listing of Ms. Doe's electronic mail address information, including usernames, any social media accounts Ms. Doe uses or intends to use, instant message account, other Internet communication platforms or devices, and Ms. Doe's username, screen name, or other method by which Ms. Doe accesses these accounts or websites;

(q)     Whether any minors reside in Ms. Doe's primary or secondary residences;

(r)     Any other registration, verification, and tracking information, including fingerprints and a current photograph of Ms. Doe, her vehicles, and her vessels, required by TBI rules;

(s)     Copy of Ms. Doe's passport; and

(t)     Professional licensing information that authorizes Ms. Doe to engage in an occupation or carry out a trade or business.

Tenn. Code Ann. § 40-39-203(i).

145.     The Act requires Ms. Doe to report in person within 48 hours if there are any changes to the information she is required to report (listed above). For example, she must report in-person if she temporarily changes residence, obtains a new job, uses a different vehicle, changes

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

her appearance, or if her closest relative gets a new phone number. Tenn. Code Ann. § 40-39-203(a)(4).

146.    Changes to a registrant's "electronic mail address information, any instant message, chat or other internet communication name or identity information that the person uses or intends to use…" must be reported in person within three (3) days rather than 48 hours. Tenn. Code Ann. §40-39-203(a)(7). Ms. Doe must report in person if she creates a new email address, opens a new social media account, or creates any other account that may fall within the phrase "other internet communication name." *Id.*

147.    The Act defines "social media" as "websites and other online means of communication that are usually used by large groups of people to share information, to develop social and professional contacts, and that customarily require an identifying password and user identification to participate." Tenn. Code Ann. §40-39-202(21).

148.    Other terms such as "electronic mail address information," "instant message," "chat," "other internet communication name or identity information," or "other Internet communication platforms or devices" are not defined. *See* Tenn. Code Ann. §40-39-203(a)(7); §40-39-203(i)(17); §40-39-203(m). It is not clear whether log-in information used to access news, banking, gaming, person-to-person financial transactions, or utilities should be reported. Given the lack of clarity, Ms. Doe regularly fears that she may be over- or under-reporting her internet activity; as a result, she errs on the side of not opening new accounts or even learning about new forms of social media.

149.    Although Ms. Doe must report extensively concerning her use of social media and the Internet, Ms. Doe did not use a cell phone, computer, or social media in the commissions of her crime of aiding and abetting kidnapping.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

150. Nonetheless, Ms. Doe fears storing pictures of her nieces and nephews, who are minor children, on her phone is a violation of the Act and has told family members not to send her pictures of their children or post them on her Facebook page. She believes (and has been told when registering) that because TBI has her Google log-in information, they have access to her personal photos on her phone and that these photos can be accessed by law enforcement. She believes (and has been told when registering) that she would be in violation of the Act's requirements if she were to be found with pictures of her nieces and nephews bathing, wearing swimsuits, or playing in the yard on her phone or social media accounts.

151. The lifetime surveillance imposed by these reporting requirements is not only intrusive but burdensome and time-consuming. Ms. Doe estimates that she has had to report in person (either quarterly or to report changes in information) eight times over the past twelve months. Reporting in person takes at least an hour but can last much longer if other registrants are also there to report. Reporting hours are only on Tuesdays, Wednesdays, and Thursdays from 8am to 3pm. Ms. Doe must take unpaid leave to report in person.

### *Impact*:  **Publicly Available Information**

152. The Act mandates that Ms. Doe's personal information be made available to the public through an internet database and toll-free telephone number. Tenn. Code Ann. § 40-39-206(d).

153. The information made available to the public and maintained online includes:

    (a)     Ms. Doe's complete name and any aliases;

    (b)     date of birth;

    (c)     sexual offense(s) or violent sexual offense(s), if any, of which Ms. Doe has been convicted;

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

(d)    Ms. Doe's primary and secondary addresses, including the house number, county, city and ZIP code where she resides;

(e)    Ms. Doe's race and gender;

(f)    The date of last verification of information by Ms. Doe;

(g)    Ms. Doe's most recent photograph submitted to TBI;

(h)    Driver's license number and issuing state;

(i)    Parole or probation officer (if applicable);

(j)    The name and address of any institution of higher education in the state at which Ms. Doe is employed, carries on a vocation, or is a student;

(k)    The text of the provision of law or laws defining the criminal offense or offenses for with Ms. Doe is registered;

(l)    A physical description of Ms. Doe, including her height, weight, color of eyes and hair, tattoos, scars and marks;

(m)    Ms. Doe's criminal history, including the date of all arrests and convictions, the status of parole, probation or supervised release, registration status and the existence of any outstanding arrest warrants;

(n)    The address of Ms. Doe's employer;

(o)    The license plate number and description of all Ms. Doe's vehicles; and

(p)    Ms. Doe's classification as an "offender against children," as defined by Tenn. Code Ann. § 40-39-202.

Tenn. Code. Ann. §40-39-206(d)(1).

154.    A redacted excerpt of Ms. Doe's publicly available TSOR profile demonstrates that the TSOR database has her classified as "violent against children." *See* Exhibit L: Doe TSOR Profile. Using the query icon next to that status displays the definition: "Violent Against Children

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

refers to a violent sexual offender whose victim(s) was/were 12 years of age or younger." *Id.*

"Violent against children" is not a statutorily recognized label under the Act.

155.    Ms. Doe's profile further displays a "TCA Code" following "Date of Offense" and "Description" in a row of data under the "OFFENSES" section. *Id.* The only date included is "07/11/2010" and the "Description" is "kidnapping USC 1201." Under the "TCA Code" is "39-13-PT5", which is a citation to the "Sexual Offenses" Part of the "Offenses Against Person" Chapter in Tennessee Code Annotated Title 39: Criminal Offenses. The expressly enumerated offenses in Tenn. Code Ann. § 39-13-5 include:

- aggravated rape;

- rape;

- aggravated sexual battery;

- sexual battery;

- mitigated statutory rape – statutory rape – aggravated statutory rape;

- sexual contact with a minor – sexual contact by an authority figure;

- indecent exposure;

- prostitution;

- patronizing prostitution;

- promoting prostitution;

- aggravated prostitution;

- public indecency;

- continuance sexual abuse of a child;

- rape of a child;

- sexual battery by an authority figure;

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

- solicitation of a minor;

- soliciting sexual exploitation of a minor – exploitation of a minor by electronic means;

- aggravated rape of a child;

- statutory rape by an authority figure;

- promoting travel for prostitution;

- especially aggravated rape;

- especially aggravated rape of a child.

*See* T.C.A. § 39-13-503 to (535).

156. Neither Ms. Doe's conviction offense nor the underlying conduct remotely meets the definition of any of the enumerated offenses in Part 5 which Defendants have publicly listed as applicable to her offense on the TSOR.

157. Using the query icon next to the "39-13-PT5" displays the following statement:

39-13-PT5 OUT OF STATE OFFENSE (VIOLENT) This sex offender was convicted of a sex crime in another state that would be classified as a Violent Sexual Offense if it occurred in Tennessee. If this offender is on the public registry of another state that information can be access by visiting the National Sex Offender public Website at https://www.nsopw.gov/.

*See* Exhibit L.

158. This description of Ms. Doe by Defendants is clearly inaccurate because Ms. Doe was not "convicted of a sex crime."

159. In addition to the above information that is publicly available, "Registry information regarding all registered offender's electronic mail address information, any instant message, chat or other internet communication name or identity information may be electronically transmitted by the TBI to a business or organization that offers electronic communication or

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization." Tenn. Code Ann. §40-39-203(m).

160. A business or organization that requests such user information from TBI must agree to notify TBI as to the results of their search. *Id*. And, it must agree not to further disseminate the user information provided by TBI. *Id*.

161. The Act not further limit or define "business or organization that offers electronic communication or remote computing services." It is unclear whether such organizations would include a person's online bank, employer, internet news source, or financial transaction profiles such as Venmo or PayPal.

162. Additionally, Ms. Doe's status as a "violent sex offender" has been repeatedly published and circulated in a local "crime beat" newspaper in her hometown of Greeneville.

163. The paper features her picture and her status as a "violent sex offender" and "offender against children" in all its publications, week after week.

164. The paper was delivered to Ms. Doe's former place of work, Quik Stop, regularly while she was employed there.

165. Ms. Doe's former co-workers, customers, and employer saw her picture in the paper and inquired about her status, causing her great discomfort and concern for her safety and continued employment.

166. Former classmates have commented on social media about. Ms. Doe's status, calling her a "child abuser," leading to questions from friends and other community members about whether Ms. Doe abused her own son.

167. As stated above, Ms. Doe must keep a driver's license or photo identification card in her possession at all times. Tenn. Code Ann. §40-39-213. Her driver's license "shall bear a

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

designation sufficient to enable a law enforcement officer to identify the bearer of the license or card as a sexual offender, violent sexual offender or violent juvenile sexual offender." Tenn. Code Ann. §50-55-353.

168.     Ms. Doe's license identifies her as a "violent sexual offender" in highly visible, red lettering. Anyone who views her driver's license will instantly know that she is registered as a "violent sex offender."

169.     Ms. Doe believes being publicly identified as a "violent sex offender" and "offender against children" in a small, close-knit community such as Greeneville continually jeopardizes her and her family's safety and has created a barrier to her re-entry into the community.

### *Impact*:  **Potential Criminal Liability**

170.     Knowing violations of any of the numerous housing, employment, conduct, and reporting requirements listed above are criminally prosecuted. *See, e.g.,* Tenn. Code Ann. § 40-39-208(b); § 40-39-211(f); §40-39-215.

171.     Most violations of the Act's provisions, like failing to timely register or pay the yearly fee are Class E felonies, which are punishable by a range of one to six years imprisonment. Tenn. Code Ann. § 40-35-112. Most violations carry a ***mandatory minimum*** sentence of imprisonment that increases for each subsequent offense. *See, e.g*., Tenn. Code Ann. § 40-39-208(b)-(e); Tenn. Code Ann. § 40-39-211(f) (emphasis added).

172.     A first violation is punishable by a fine not less than $350 and imprisonment of not less than ninety days. Tenn. Code Ann. § 40-39-208(c).

173.     A second violation is punishable by a fine not less than $600 and imprisonment of not less than 180 days. Tenn. Code Ann. § 40-39-208(d).

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

174. A third or subsequent violation is punishable by a fine not less than $1,100 and imprisonment not less than one year. Tenn. Code Ann. §40-39-208 (e).

***Impact*: Other Restrictions**

175. Ms. Doe is subject to various other conditions under the Act that bear no relationship to her prior conduct.

176. For example, she cannot obtain employment driving an ice cream truck for the purpose of attracting minors, § 40-39-215(a)(3), nor can she obtain any employment that she knows will put her in direct, unsupervised contact with a minor, §40-39-215(a)(2).

177. Ms. Doe can be barred from her local library. Tenn. Code Ann. § 40-39-216.

178. Ms. Doe believes (and has been told while registering) that she cannot celebrate Halloween. On the evening of Halloween, she cannot place decorations outside her house, pass out candy, or even have her porch lights on. She cannot go trick-or-treating with her son or attend celebrations at her church.

***Conclusion***

179. The Act's grievous impact on Ms. Doe inflicts punishment on her every day and will continue to do so for the rest of her life.

180. The restrictions of Act wrongfully placed on her constitute a continuing violation of her Constitutional rights.

181. Non-compliance with the vague and complex requirements of the Act exposes Ms. Doe to potential felonious criminal liability with significant consequences including mandatory minimum sentences every day.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

182.    Defendants wrongful conduct – in the form of enforcing the Act against Ms. Doe and those similarly[9] situated – continues as do the resulting injuries.  Further injury would be avoidable if any time Defendants ceased their wrongful conduct by not enforcing the Act on Ms. Doe and those similarly situated.

## V.    CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

(Violation of Substantive Due Process: 42 U.S.C. §1983)

183.    Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

184.    A state statutory requirement violates substantive due process under the Fourteenth Amendment if it bears **no rational relationship or connection** to a legitimate legislative purpose.

185.    The Act sets forth various legislative findings[10], including:

- Repeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety. Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment and protection of the public from these offenders is of paramount public importance.

- It is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses … to allow members of the public to adequately protect themselves and their children from these persons.

- Persons convicted of these sexual offenses have a reduced expectation of privacy because of the public's interest in public safety.

---

[9] In this case, "similarly situated" means any individual whose purported qualifying offense occurred before 2014 and/or was a non-Tennessee offense.

[10] *Ms. Doe v. Rausch*, 461 F.Supp.3d 747, 766 (E.D. Tenn. May 14, 2020) (quoting Tenn. Code Ann. § 40-39-201(b)).

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

186.    Notably, these concerns apply to *"[r]epeat sexual offenders*, *sexual offenders* who use physical violence and *sexual offenders* who prey on children." Tenn. Code Ann. § 40-39-201(b)(1) (emphasis added).

187.    Indeed, the Act is titled "Tennessee *Sexual Offender* and *Violent Sexual Offender* Registration, Verification, and Tracking Act" and only has three classifications of offenders: sexual offenders, violent sexual offenders and violent juvenile sexual offenders. Tenn. Code Ann. § 40-39-101, *et seq*. (emphasis added). There is no class of non-sexual or "other" offenders for the purposes of the Act's requirements.

188.    Ms. Doe has never been charged with or convicted of an offense involving sexual conduct of any kind – let alone sexual *misconduct*.

189.    Registering Ms. Doe, someone who has never committed a sex crime, as a violent sex offender violates her substantive due process rights, as her lifetime registration bears no rational connection to the Act's legislative purposes.

## SECOND CLAIM FOR RELIEF

(Violation of Procedural Due Process—Lack of Challenge to Placement on Registry: 42 U.S.C. § 1983)

### "As Applied" and Facial Challenge

190.    Plaintiff restates and incorporates by reference the preceding paragraphs above as is fully set forth herein.

191.    Ms. Doe – and all similarly situated individuals – have a protected liberty interest in being free from the stigmatizing, punitive, and invasive restrictions on their lives from being publicly labeled a "sex offender" by Defendants and having to comply with registration requirements.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

192.    Defendants have publicly labeled Ms. Doe a "violent sex offender" and forced her to comply with the Act's requirements.  This classification determination and resulting subjugation of Ms. Doe by Defendants constitutes a deprivation of her protection liberty interest.

193.    Ms. Doe's classification determination by Defendants took place without her participation in a process that involved the factual and legal analysis of the facts underlying her conviction by General Counsel for the TBI.

194.    Neither Ms. Doe – nor any similarly situated person – has an opportunity under the Act to establish that their conviction and/or underlying conduct is not "an act which constitutes the offense of" any of the specifically enumerated, qualifying Tennessee offenses.

195.    Because the classification process takes place whenever a non-Tennessee conviction is involved, every such individual – including Ms. Doe – will have their procedural due process rights violated by the Act's operation.  There is no set constitutionally sufficient circumstances under which the routine determination in accordance with the Act of whether a non-Tennessee offense – or conduct underlying such an offense – is "an act which constitutes the offense of" any of the qualifying, specifically enumerated Tennessee offenses could be reached.

196.    Accordingly, the Act is unconstitutional both as applied to Ms. Doe and on its face with respect to every other similarly situated individual.

197.    Ms. Doe specifically requested on October 8, 2023 that the Defendants schedule a classification hearing incorporating the safeguards guaranteed by procedural due process, which the Defendants explicitly declined to do on October 17, 2023.  *See* Exhibit H; Exhibit I.

198.    On this basis, the Court should halt the operation of the Act with respect to Ms. Doe and any similarly situated individual because they have been deprived of their liberty without due process.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

## THIRD CLAIM FOR RELIEF

(Violation of Due Process—Vagueness: 42 U.S.C. § 1983)

199.     Plaintiff restates and incorporates by reference the preceding paragraphs above as is fully set forth herein.

200.     The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of common knowledge are not left to guess at their meaning.  Under Sixth Circuit law, laws are impermissibly vague when they deny fair notice of the standard of conduct by which the citizen is to be held accountable or gives law enforcement officials an unrestricted delegation of power which leaves the definition of its terms to them.

201.     Under the Act, the determination of whether a non-Tennessee law offense is "an act that constitutes the criminal offense of" a qualifying Tennessee offense is made in the sole discretion of the TBI through a process in which the offender – Ms. Doe and every similarly situated person – are not allowed to participate.  In other words, the TBI enjoys an unrestricted delegation of power to define the standard of conduct by which these impacted citizens are held to account.

202.     By carving out space for this ultra-governmental process, the Act intentionally and systematically denies impacted citizens fair notice of whether a non-Tennessee offense would meet the standard of conduct which qualified them to register as a sex offender or violent sexual offender in Tennessee.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

203. Reading the entire Act would put no rational person on fair notice that a kidnapping offense, which did not involve – and was not even alleged to have involved – sexual conduct of any kind, would be considered a violent sexual offense under Tennessee law.

204. Moreover, Defendants cannot argue that the Act is permissibly unambiguous because Ms. Doe and her co-Defendant Brooke Stumbo were charged with the same offense, based on the same conduct, and pleaded guilty to the same offense. Yet, Ms. Doe is classified as a "violent sex offender" with lifetime registration while Stumbo is classified as only a "sex offender" making her eligible for removal from the public registry and all requirements in the future.

205. Therefore, the Act is unconstitutionally vague and should be prohibited from operation against Ms. Doe and anyone else currently being required to register for a non-Tennessee offense.

## FOURTH CLAIM FOR RELIEF

(Violation of Due Process—Interference with Familial Relations: 42 U.S.C. § 1983)

206. Plaintiff restates and incorporates by reference the preceding paragraphs above as is fully set forth herein.

207. Directing the care, upbringing, and education and of their children is a fundamental right belonging to every parent under the Fourteenth Amendment to the United States Constitution.

208. The Due Process Clause of the Fourteenth Amendment prevents states from interfering with private family relationships and protects the fundamental right to direct the care, education and upbringing of children.

209. The Act's restrictions of Ms. Doe's ability to enter her son's school and supervise him while playing at a park or with other children severely infringe upon Ms. Doe's ability to raise her child.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

210.     The Act's restrictions on spending the night with her family, where minor children are present, severely infringes on Ms. Doe's ability to visit with her family.

211.     The Act Ms. Does not provide any mechanism for individual consideration to consider whether Ms. Doe poses a risk to those at her son's school or her minor relatives.

212.     The Act therefore violates Ms. Doe's fundamental rights under the Fourteenth Amendment.

## FIFTH CLAIM FOR RELIEF

(Violation of the Ex Post Facto Clause: 42 U.S.C. §1983)

### "As Applied" Challenge

213.     Plaintiff restates and incorporates by reference the preceding paragraphs above as is fully set forth herein.

214.     For the purposes of the Ex Post Facto clause, the Act is punishment.

215.     The retroactive application of the Act through the 2014 amendment, therefore, violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, §10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to its enactment.

216.     2014 Tenn. Pub. Act ch. 770 § 2 enacted Tenn. Code. Ann. § 40-39-202(10) and Tenn. Code. Ann. § 40-39-207(g)(2)(C), which created "offender against children" status and the requirement lifetime registry for any offender whose victim was 12 years old or younger.

217.     To the extent that the TBI based the lifetime registry requirement for Ms. Doe on the age of the minor victim in her case – Tenn. Code. Ann. § 40-39-202(10) and Tenn. Code. Ann. § 40-39-207(g)(2)(C) – then this action is unconstitutional on *ex post facto* grounds since Ms. Doe's conviction occurred in 2011 predating the 2014 passage and creation of "offender against children" status.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

218.     Because the TBI refuses to comport with procedural due process in its determination of registry requirements, the specific basis of Ms. Doe's lifetime requirement is not known.

219.     Accordingly, the retroactive application of "offender against children" status to Ms. Doe is a violation of the ex post facto clause of the United States Constitution and should be prohibited.

220.     Therefore, the Court should order the immediate halt to any application of "offender against children" status and all associated requirements to Ms. Doe.

## VI.     REQUESTS FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

1.     Issue a judgment declaring that the Act's requirements that Plaintiff, who was convicted of an offense that did not involve sexual misconduct or sexual conduct at all, must be falsely labeled as a violent sex offender and subjected to the Act's conditions through a process in which she was not allowed to participate violates her Substantive and Procedural Due Process Rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and issue a permanent injunction restraining Defendants from enforcing the Act against Plaintiff and all those similarly situated and removing Plaintiff from the sex offender registry (First and Second Claim for Relief);

2.     Issue a judgment declaring that the Act is void due to vagueness under the Due Process Clause of the Fourteenth Amendment, and issue an injunction restraining Defendants from enforcing those provisions of the Act that are unconstitutional (Third Claim for Relief);

3.     Issue a judgment declaring the Act unconstitutionally interferes with Plaintiff's fundamental rights to direct the education and upbringing of her children, and issue an injunction

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

restraining Defendants from enforcing the Act against Plaintiff and removing Plaintiff from the sex offender registry (Fourth Claim for Relief);

4.      Issue a judgment declaring the Act violates the Ex Post Facto Clauses of the United States Constitution by retroactively imposing the punishment of "offender against children" status – passed into law in 2014 – to Ms. Doe due to her 2011 conviction and issue a permanent injunction restraining Defendants from applying such status to Ms. Doe. (Fifth Claim for Relief);

5.      Award Plaintiff reasonable attorneys' fees, costs, and expenses incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and,

6.      Grant such other relief as the Court finds just and proper.

Dated: October 24, 2023.

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

## **VERIFICATION**

I, Plaintiff ✕✕✕✕✕✕✕ aka "Jane Doe", do hereby declare under penalty of perjury

that the foregoing is true and correct to the best of my knowledge, information, and belief.



__Text_____
PLAINTIFF "JANE DOE"

10 / 24 / 2023

_____
DATE

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1

Respectfully submitted:

/s/ Davis Griffin
Davis Fordham Griffin, Esq.
TBPR #34555
MOCKINGBIRD LAW GROUP, PLLC
P.O. Box 282218
Nashville, TN 37208
davis@mockingbirdlaw.com
615-280-0899


/s/ Stella Yarbrough
Stella Yarbrough, BPR # 033637
Lucas Cameron-Vaughn, # 038451
Jeff Preptit, # 038451
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org
lucas@aclu-tn.org
jpreptit@aclu-tn.org

Doc ID: 09f811a0e4c621499461421344284a227a1d0bb1