# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **JANE DOE,** | **Case No. 3:23-cv-00965** |
| *Plaintiff,* | |
| **v.** | **JURY DEMAND** |
| | **District Judge Trauger** |
| **WILLIAM B. LEE, Governor of the State of Tennessee,** *in his official capacity***; DAVID RAUSCH, Director of the Tennessee Bureau of Investigation,** *in his official capacity,* | **Magistrate Judge Newbern** |
| *Defendants.* | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT

  This Honorable Court should deny Defendant's Motions to Dismiss because Ms. Doe has standing against both defendants, this Court has jurisdiction over the Defendants and all subject matter in this case, and Ms. Doe has sufficiently pleaded all of her claims so as to put the Defendants on fair notice of the relief she seeks.

### <u>Background</u>

  On September 8, 2023, Ms. Doe filed a Complaint for Declaratory and Injunctive Relief against Defendant Lee and Defendant Rausch in their official capacities. (D.E. 1 at PAGEID# 1-42). On October 24, 2023, Ms. Doe filed an Amended Complaint for Injunctive and Declaratory Relief. (D.E. 32 at PAGEID# 302-346). She seeks: her removal from the Tennessee Sex Offender Registry (as established by the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 ("the Act")); prohibition of any enforcement

of the Act against her; and, declaration of the Act as unconstitutional with respect to registrants, like Ms. Doe, whose classification is based on a non-Tennessee offense. (D.E. 32 at PageID# 345-346). Specifically, Ms. Doe brings five claims including (1) violation of her substantive due process rights, (2) violation of her procedural due process rights, (3) unconstitutional vagueness, (4) violation of her Fourteenth Amendment right to direct the care, upbringing and education of her child, and (5) violation of the *ex post facto* clause. (*Id.* at PageID# 339-345).

On November 6, 2023, Defendants filed a Motion to Dismiss and accompanying Memorandum of Law pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 35, 36).

The Motion to Dismiss claims that Ms. Doe cannot proceed against Defendants for lack of standing and subject matter jurisdiction, that standing doctrine also prohibits relief on her facial challenges because it would benefit similarly situated non-parties, that *all* of Ms. Doe's claims fail under Rule 12(b)(6), and that Ms. Doe's procedural due process claim is barred by the statute of limitations. (D.E. 36 at PageID# 399). These contentions are without merit.

## Legal Standard

"Rule 12(b)(1) motions 'come in two varieties: a facial attack or a factual attack.'" *Rote v. Zel Custom Mfg., LLC,* 816 F.3d 383, 387 (6th Cir. Mar. 7, 2016) (internal quotation omitted). A facial attack, like the one here[1], […] 'questions merely the sufficiency of the pleading.'" *Id.* In a

---

[1]Alternatively, "[a] factual attack, also known as a 'speaking motion,' raises a factual controversy, [wherein] the district court must weigh the conflicting evidence to arrive at the factual predicate that subject matter does or does not exist." *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 331 (6th Cir. Jun. 20, 2007) (internal citation omitted). In its review, the district court has wide discretion to allow affidavits, documents, and even limited evidentiary hearing to resolve jurisdiction facts." *Id.* To the extent the Court perceives a sufficient subject matter jurisdiction question surrounding the propriety of even allowing Ms. Doe to proceed beyond than this stage for her sought relief against Defendants, she respectfully requests the Court exercise its "wide discretion" to hold a limited evidentiary hearing in order to resolve any such question. *Gentek*

facial attack, all well-plead facts are presumed to be true. *See Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) ("A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis.").

Likewise, when evaluating a motion to dismiss brought pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983) (internal citations omitted). It is settled law that a court may not grant a defendant's Rule 12(b)(6) motion to dismiss unless it appears beyond doubt that the claimant can prove no set of facts supporting its claim which would entitle it to relief. *See id*; *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989).

Motions to dismiss on the basis of statute of limitations are construed as Rule 12(b)(6) motions for failure to state a claim. *New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). "Generally, [however] a motion under Rule 12(b)(6) motion [...] is an 'inappropriate vehicle' for dismissing a claim on statute-of-limitations grounds [...] [b]ecause the statute of limitations is an affirmative defense." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 20130) (internal quotation omitted). Courts should not dismiss complaints on statute-of-limitations grounds when there are disputed factual questions relating to the accrual date." *Garrett v. Ohio State Univ.* 60 F.4th 359, 367 (6th Cir. 2023) (quoting *American Premier Underwriters, Inc. v. AMTRAK*, 839 F.3d 458, 464 (6th Cir. 2016)).

"Dismissal of complaints under the civil rights statutes are scrutinized with special care." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). "A complaint need not set down in detail all

---

*Bldg. Prods.*, 491 F.3d at 331. Ms. Doe submits, however, that no legitimate question of that nature exists here.

the particularities of a plaintiff's claim against a defendant." *Id.* "All a complaint need do is afford the defendant 'fair notice' of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

### Discussion

### I.     Standing And Jurisdiction.

#### I-A.     Defendant Lee is subject to this Court's jurisdiction.

Defendants concede that this Court can "prevent Defendants 'from enforcing state laws' in ways that run 'contrary to federal law.'" (D.E. 36 at PageID# 402). Indeed, Governor Lee is not entitled to sovereign immunity—as has been found repeatedly in this District. *Ex Parte Young* carves out an exception to eleventh amendment immunity. *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1414 (6th Cir. 1996) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Under *Ex Parte Young*,

> [I]ndividuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

209 U.S. at 157. Accordingly, "Tennessee's sovereign immunity does not provide a shield from these claims for individual defendants sued in their official-capacity." *Newsome v. Lee*, No. 3:21-CV-00041, 2021 WL 1697039, at *5 (M.D. Tenn. Apr. 29, 2021) (rejecting Lee's and Rausch's claims of sovereign immunity from constitutional challenge to sex offender registry); *see also*, *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *9 (M.D. Tenn. Nov. 9, 2017)(same); *Doe v. Lee*, 2021 U.S. Dist. LEXIS 90631, *24-25 (M.D. Tenn. May 12, 2021)(same).

4

Defendant Lee[2] argues that "the Governor's lack of enforcement authority over the Act forecloses any exception to his [sovereign] immunity." (D.E. 36 at PAGEID# 404). On the contrary, because "much of the actual enforcement of the Act is entrusted to the numerous, diffuse local law enforcement entities of the state [including "TBI and TDOC"] with no single agency or official possession the kind of singular authority that would render other defendants unnecessary [...] the Governor is an appropriate defendant in this case." *Doe v. Lee*, 2021 U.S. Dist. LEXIS 90631, *24-25 (M.D. Tenn. May 12, 2021); *see also Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 & n. 5 (6th Cir. 1982) (finding the Governor was the appropriate defendant "even in the absence of specific state enforcement provisions" because "the substantial public interest in enforcing the [...] legislation involved here places a significant obligation upon the Governor to use his general authority to see that state laws are enforced."); *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *9 (M.D. Tenn. Nov. 9, 2017)(finding the same). If Governor Lee "lack[s] enforcement authority over the Act", why is his name and office along with that of Defendant Rausch on the letterhead of the denial letters Ms. Doe received in June 2019 and October 2023? (D.E. 32-6 at PAGEID# 370; D.E. 32-9 at PageID# 378). The answer is because Defendant Lee does, in fact, have enforcement authority over the Act, which makes him a proper Defendant in this case.

**I-B.    Defendant Rausch concedes jurisdiction.**

---

[2] Defendants also repeatedly cite to challenges to the Act in which Governor Lee is a defendant, asking the Court to take notice of the legal analyses in those cases—but not the parties. *See* D.E. 20 at PageID #175 (citing *Nichols v. Lee*, No. 3:22-cv-1004, 2023 WL 5284879 (M.D. Tenn. Aug. 16, 2023); *Doe #11 v. Lee*, 609 F. Supp. 3d 578, 599-600 (M.D. Tenn. 2022)); D.E. 20 at PageID #182 (citing *Doe v. Lee* ("Doe 28"), No. 3:21-CV-00028, 2022 WL 17650484 (M.D. Tenn. Dec. 13, 2022)).

Defendant Rausch concedes that this Court has subject matter jurisdiction to enjoin him in his official capacity. (D.E. 36 at PageID# 405). Defendants specifically concede that "Director Rausch must classify offenders and determine if they meet statutory requirements for termination of registration obligations." *Id*. (citing Tenn. Code Ann. §§ 40-39-202, -207). This authority falls exactly within the relief Ms. Doe seeks—to be removed from the registry. Any additional relief she seeks stems directly from Director Rausch's ample statutory authority to "establish" and "maintain" the registry. *See* Tenn. Code. Ann. §40-39-206(a), -202(20). (D.E. 32 at PageID# 345-346). Defendants' argument that the Director of T.B.I. is not an appropriate defendant is "wholly without merit." *Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *10 (M.D. Tenn. Nov. 9, 2017).

### I-C.  This Court has the power to grant Ms. Doe's requested relief.

"Courts have regularly held that a plaintiff may seek an injunction applicable to all similarly situated individuals harmed by the same unconstitutional practice, without the necessity of seeking class-action treatment." *See Caspar v. Snyder*, 77 F. Supp. 3d 616, 642 (E.D. Mich. 2015) (gathering cases and authorities). Indeed, "district courts are not categorically prohibited from granting injunctive relief benefitting an entire class in an individual suit…" *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003); *see also L. W. v. Skrmetti*, No. 23-5600, 2023 WL 6321688, at *40 (6th Cir. Sept. 28, 2023)(White, J., dissenting).

Once a constitutional violation is found, the scope of that relief must be tailored to fit "the nature and extent of the constitutional violation," *see Milliken v. Bradley*, 418 U.S. 717, 744 (1974), and must be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Sharpe*, 319 F. 3d at 273. "[I]f the arguments and evidence show that a statutory provision is unconstitutional on its face, an injunction prohibiting its enforcement is

'proper.'" *Whole Woman's Health v. Hellerstedt,* 579 U.S. 582, 136 S. Ct. 2292, 2307 (2016), *as revised* (June 27, 2016), and *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.,* 142 S. Ct. 2228 (2022). "Nothing prevents [a] Court from awarding facial relief as the appropriate remedy for […] as-applied claims." *Id.*

Here, Ms. Doe alleges she was not afforded procedural Due Process under the Act when T.B.I. made the opaque, unilateral decision to require her to register. (D.E. 32 at PAGEID# 341). In doing so, Ms. Doe posits her facial challenge in the exact terms for which Defendants cite *L.W. II*: there are no set of circumstances by which anyone with an out-of-jurisdiction conviction could be afforded Due Process under the Act because the Act provides no process at all—to Ms. Doe or anyone similarly situated.[3] *See L.W. v. Skrmetti* ("L.W. II"), 73 F.4th 408, 414 (6th Cir. 2023). While the burden for establishing a facial challenge is high, Ms. Doe's pleadings sufficiently allege a lack of process for those with out-of-jurisdiction convictions. (D.E. 32 at PAGEID# 311-314; D.E.32-6 at PAGEID# 370; D.E. 32-7 at PAGED# 371-373; D.E.32-9 at PAGEID# 378). Thus, the Court could (and should) enjoin Defendants from enforcing the offending statutory provision entirely, which is an appropriate relief for a facial challenge. *Whole Woman's Health*, 136 S. Ct. at 2307 (2016)).

---

[3] As outlined more fully in Section II-E-1, the Act does not empower anyone or any agency to determine whether a conviction in another jurisdiction meets the definition of "conviction" as defined in Tenn. Code Ann. §40-29-202(1). The onus of registering appears to be placed on the person with a potentially qualifying conviction. *See* Tenn. Code. Ann. § 40-39-203(a). Nor does the Act specify a process or criteria for making this determination. The only elements-style analysis T.B.I is instructed by the Act to conduct is in processing requests for removal. *See* Tenn. Code Ann. §40-39-207(g).

Defendants claim that T.B.I conducts a comparison of the "elements of the offense" (D.E. 20 at PageID #186) yet T.B.I has explicitly argued in other proceedings the necessity of "looking beyond the elements" in making a classification determination. *See, e.g., Livingston v. State*, No. M200901900COAR3CV, 2010 WL 3928634, at *3 (Tenn. Ct. App. Oct. 6, 2010). The inconsistency belies Ms. Doe's claim: there is no process here besides ad hoc agency decisions.

Alternatively, should some constitutionally-sound process be crafted as a form of relief, Defendants would likely provide the same process for similarly situated individuals (lest Defendants knowingly and intentionally create causes of action like Ms. Doe's for each person with an out-of-state conviction). Thus, the scope of relief likely would not be more burdensome than necessary. *Sharpe*, 319 F. 3d at 273. The same analysis applies with equal force to Ms. Doe's substantive Due Process claim. Requiring Ms. Doe to register as a violent sex offender against children when she has never committed, been accused of, or convicted of any sexual misconduct does not advance the State's interest in protecting the public from "[r]epeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children…" Tenn. Code Ann. §40-39-201(b)(1). This logic applies to others who are similarly situated and have never been convicted of a crime involving sexual misconduct. If the State would like to protect the public from the "extreme risk" of sexual offenders, Tenn. Code Ann. §40-39-201(b)(1), it must first accurately identify them. To the extent that there is any factual dispute as to the efficacy of the Act in furthering the State's interest, those must be resolved in Ms. Doe's favor at the motion to dismiss stage. *Windsor*, 719 F.2d at 158.

As long as Ms. Doe demonstrates why such broader relief is actually appropriate to address her § 1983 injuries – which she has in her facial challenges– it is not "categorically improper to grant [her] relief that might so happen to also benefit others." *Does 1-9 v. Lee, Rausch*, 3:21-cv-00590, Doc. No. 134, (M.D. Tenn. Mar. 3, 2023) (citing *Bongo Prods, LLC v. Lawrence*, 548 F. Supp. 3d 666, 686 n.11 (M.D. Tenn. 2021) (Trauger, J.) (explaining why relief limited to the plaintiffs would be insufficient). Ms. Doe can and has beyond plausibly demonstrated why such relief is appropriate in her Complaint.

## II.    All Of Ms. Doe's Claims Are Plausibly And Sufficiently Pleaded.

Again, Defendants simply restate the strength-of-the-merits arguments from their Response in Opposition to Motion for Preliminary Injunction.  Ms. Doe will treat each argument in turn under the proper standards.

### II-A.    Ms. Doe's ex post facto claim is properly and sufficiently stated.

After a lengthy discussion on sections of the Act not challenged by Ms. Doe, Defendants finally recognize, "The only provision of the Act Plaintiff identifies as being retroactive to her […] is the 2014 amendment that added the 'offender against children' classification."  (D.E. 36 at PageID# 408-410).  Defendants concede that the "offender against children" classification was created three years *after* Ms. Doe's conviction on which her classification is based.  (D.E. 36 at PAGEID# 409).  As this Court has previously held, "The Clause is about timing, plain and simple." *John Does #1-#10 v. Lee, Rausch*, Case 3:21-cv-00590, Doc. No. 93, ((M.D. Tenn. Jun. 22, 2022) at pp. 14.  Since Ms. Doe has demonstrated that the TBI requires her lifetime registration on the basis of her (wrongful) "violent sex offender" classification as well as her (wrongful) "offender against children" classification, the ex post facto claim with respect to the latter is clearly established and pleaded. (D.E. 32-6 at PageID# 370).

### II-B.    Ms. Doe's substantive due process claim is plausibly and sufficiently pleaded.

"[D]ue process claims for injuries inflicted under color of state law may proceed either upon the theory that a deprivation has occurred without procedural due process or or that there has been a substantive due process violation; that is, either the official conduct shocks the conscience [..] or infringes a specific constitutional guarantee[.]" *Wilson v. Beebe*, 770 F.2d 578, 583 (6th Cir. 1985).

Even "legislation that does not proscribe fundamental liberties nonetheless violates the Due Process Clause where it imposes burdens without any 'rational basis' for doing so." *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010) (quoting *U.S. v. Comstock*, 560 U.S. 126, 151 (2010)). Ms. Doe must show that the logical connection between the law and the asserted interest or goal is "so remote as to render the policy arbitrary or irrational." *ACLU Fund of Mich. v. Livingston Cnty*, 796 F.3d 636, 646 (6th Cir. 2015). This standard, while deferential, is not toothless. *Berger v. City of Mayfield Heights*, 154 F.3d 621, 625 (6th Cir.1998) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976)); *see also, e.g., Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000)(finding "zero tolerance" school policy prohibiting even unknowing possession of weapons was not rationally related to school interest in safety); *Craigmiles v. Giles*, 312 F.3d 220, 225 (6th Cir. 2002) (finding regulation only passed to protect financial interests of specific group did not pass rational basis scrutiny). In conducting its review of the rationality of a statute, a court can consider the "countervailing costs" to the targets of the challenged statute. *See Plyler v. Doe*, 457 U.S. 202, 223-224 (1982); *cf. Yunus v. Robinson*, No. 17-CV-5839, 2019 WL 168544, at *9 (S.D.N.Y. Jan. 11, 2019).

Construing the facts in a light most favorable to Ms. Doe, the Court should find that she has sufficiently pleaded that there is no rational relationship between requiring people who have never been determined in any way to have committed sexual misconduct to register as sexual offenders or violent sexual offenders—for the entirety of their natural lives—and the goal of protecting the public from sexual predators.

In fact, the inclusion of those who have not committed sexual misconduct on the sex offender registry *undermines* the State's interest in alerting the public of sex offenders. *Cf. Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *11 (S.D.N.Y. Jan. 11, 2019) ("labeling

individuals as sex offenders when their crimes are not sexual actually risks undermining the usefulness of the registry created to effectuate SORA's purpose."). The label of "violent sexual offender against children" is actively misleading in the case of Ms. Doe. She has never committed any sexual misconduct, much less sexual violence against a child, making the label an outright falsehood and conveying none of the information about sex offenders that the State asserts is in the public interest. *See* Tenn. Code Ann. § 40-39-201(1)("Repeat sexual offenders, sexual offenders who use physical violence and sexual offenders who prey on children are violent sexual offenders who present an extreme threat to the public safety. Sexual offenders pose a high risk of engaging in further offenses after release from incarceration or commitment and protection of the public from these offenders is of paramount public interest.") Compare then the costs: the public gains nothing—only misleading and untrue information about Ms. Doe—while nearly every aspect of Ms. Doe's life is harmed by the Act and its stigmatizing label. *See Plyler*, 457 U.S. at 224.

State and city courts in Florida, Ohio, and New Mexico have held that requiring people convicted of non-sexual crimes, like kidnapping, to register as sex offenders is not rationally related to the government interest of protecting victims or potential victims of sex offenders. *See Raines v. State*, 805 So.2d 1999, 1003 (Fla. Dist. Ct. App. 2001) (holding that requiring sex offender registration for non-sex crime violates substantive due process); *State v. Robinson*, 873 So.2d 1205 (Fla. 2004)(same); *State v. Reine*, No. 19157, 2003 WL 77174 (Ohio Ct. App. 2003) *State v. Small*, 833 N.E.2d 774, 782-3 (Ohio Ct. App. 2005) (same); *ACLU of NM v. City of Albuquerque*, 137 P.3d 1215 (N.M. Ct. App. 2006)(same).

More recently, the Southern District of New York also granted relief on substantive due process grounds to a plaintiff who pled guilty to kidnapping an unrelated minor with no sexual purpose and was nonetheless required to register as a sex offender. *See Yunus v. Robinson*, No. 17-

CV-5839 (AJN), 2019 WL 168544, at *1 (S.D.N.Y. Jan. 11, 2019), *appeal withdrawn sub nom. Yunus v. Lewis-Robinson*, No. 19-382, 2019 WL 3814554 (2d Cir. May 15, 2019).

As Defendants note, other courts have decided the issue differently. *See Rainer v. State*, 690 S.E.2d 827 (Ga. 2010); *Cox v. Kentucky*, No. 1:10CV-93-M, 2010 WL 3909236, at *4 (W.D. Ky. Sept. 30, 2010)(pro se claim); *Moffitt v. Commonwealth of Kentucky*, 360 S.W.3d 247, 255 (Ky. Ct. App. 2012); *People v. Johnson*, 225 Ill.2d 573 (Ill.2007); *Marlett v. State*, 878 N.E.2d 860, 870 (Ind.Ct.App.2007); *People v. Cintron*, 827 N.Y.S .2d 445, 460 (N.Y.Sup.Ct.2006); *State v. Smith*, 780 N.W.2d 90(Wis.2010); *State v. Sakobie*, 165 N.C.App. 447, 452 (N.C.Ct.App.2004); *State v. Coleman*, 385 P.3d 420 (Ariz. Ct. App. 2016); *People v. Bosca*, 871 N.W.2d 307, 355 (2015)(pro se claim).

In denying a substantive due process claim, an Arizona court of appeals noted that the sex offender registry statutes of the states where the claim succeeded were narrowly tailored to apply to sex offenders and not to offenders against children generally. *See State v. Coleman*, 385 P.3d 420, 425 (Ariz. Ct. App. 2016)(distinguishing Arizona's statute from those of Florida, Ohio, and New Mexico); *cf. also, People v. Diaz*, 150 A.D.3d 60, 68, 50 N.Y.S.3d 388, 394 (2017), *aff'd on other grounds*, 32 N.Y.3d 538, 118 N.E.3d 201 (2018) (drawing similar distinction between New York registry for people who commit sex crimes and Virginia registry for those who commit sex crimes *and* crimes against minors). That is, statutes that explicitly regulate sex offenders and that were enacted to protect the public from sex offenders did not rationally advance that purpose when targeting persons convicted of non-sex crimes. Indeed, the Florida statute (at the time of decision) defines those convicted of certain offenses as "sexual offenders." Fla. Stat. §943.0435(h)(a)(I). The Ohio statute also defines registry offenses as "sexually oriented offenses." Ohio Rev. Code. Ann. 2950.01(A). And, the New Mexico statute also defines those who must register as "sexual

offenders" who committed "sexual offenses." N.M. Stat. Ann. § 29–11A–3(H), (I). Arizona's law, in comparison, did not define the offenses requiring registration strictly as sex offenses or those who were required to register as sexual offenders. *See* Ariz. Rev. Stat. §§ 13–3821 through 13–3829. Therefore, the Arizona legislature arguably had some basis for adding non-sex offenses to its registry.

Tennessee's statute is more like the Florida, Ohio, and New Mexico statutes in that it applies only to "sexual offenders" and "violent sexual offenders" rather than, for example, those who commit crimes against minors without further qualification. *Compare, e.g.,* Va. Code Ann. § 9.1-900 (establishing Sex Offender and Crimes Against Minors Registry). In the first section of the Act, the General Assembly finds that the purpose of the law is to protect the public from sex offenders, not merely those who pose some other kind of threat to the safety of children. *See* Tenn. Code Ann. § 40-39-201(1)("Repeat *sexual* offenders, *sexual* offenders who use physical violence and *sexual* offenders who prey on children are violent *sexual* offenders who present an extreme threat to the public safety. *Sexual* offenders pose a high risk of engaging in further offenses after release from incarceration or commitment and protection of the public from these offenders is of paramount public interest.")(emphasis added).

In further contrast, many states have modified their sex offender registry laws to explicitly require a finding of a sexual component to the kidnapping before registration can be required. *See, e.g.*, Iowa Code § 692A.102(1)(c)(14) (defining kidnapping as a sexual offense if a determination is made that the offense was sexually motivated); N.M. Stat. Ann. § 29–11A–3(I)(6) (defining kidnapping as a sexual offense "when committed with the intent to inflict a sexual offense"); S.C.Code Ann. § 23–3–430(C)(15) (stating that a person convicted of kidnapping is considered a sex offender "except when the court makes a finding on the record that the offense did not include

a criminal sexual offense or an attempted sexual offense"); Tex.Code Crim. Proc. Ann. art. 62.001(5)(C) (defining aggravated kidnapping as a reportable sexual offense "if the actor committed the offense or engaged in the conduct with intent to violate or abuse the victim sexually"); Vt. Stat. Ann. tit. 13, § 5401 (sexual offender registration for kidnapping only required when committed with specific intent to sexually assault the victim).

Unlike these statutes, Tennessee's Act does not require a further finding of sexual intent or sexual component to the abduction. It does, however, allow for judicial determinations regarding whether placement on the registry is appropriate for those convicted of statutory rape, *see* Tenn. Code Ann. §40-39-202(A)(ii); §39-13-506(d). This aspect of the Act shows that it is certainly feasible for judges to determine upon conviction whether there has been sexual misconduct in an otherwise non-sexual criminal act that merits placement on the sex offender registry, as do the other state statutes listed above. It also shows the irrationality of the Act: someone could commit and be convicted of ***sexual misconduct involving a minor*** and not be required to register as a sex offender, while someone who has never committed any sexual misconduct at all could be required to register as a violent sex offender against children for their entire life.

Even where "[a]ll agree that [state interest or goal] is legitimate […] the question is whether the law serves this objection, whether a rational connection exists between its ends and its avowed means." *Tiwari v. Friedlander*, 26 F.4th 355, 363-364 (6th Cir. 2022). Unlike here, the Court in *Tiwari* had the benefit of the case having proceeded through the discovery phase in the district court. *Id.* at 361. This discovery produced "competing expert reports" which allowed both the district court and the Sixth Circuit to engage in a meaningful analysis of the rationality behind the challenged law. *Id.* This Court should follow *Tiwari*'s lead and allow factual development. For the purposes of opposing a motion to dismiss, however, Ms. Doe has sufficiently pled that the Act

14

is not rationally related to a legitimate government interest and therefore violates her right, and the rights of others similarly situated, to substantive due process.

### II-C. The Act impermissibly interferes with every aspect of her constitutionally protected right to direct the education and upbringing, and care of her child.

"The Supreme Court has repeatedly recognized that 'fundamental rights and liberty interest' entitled to a heightened level of constitutional protection include, not only 'the specific freedoms protected by the Bill of Rights' but also, among other things, the rights to may, have children and direct the education and upbringing of those children." *Doe v. Lee*, 2021 U.S. Dist. LEXIS 90631, *58-59 (M.D. Tenn. May 12, 2021).

Defendants concede that, pursuant to the Act, Ms. Doe may only enter the premises of her child's school for any reason – school conference or otherwise as listed in T.C.A. § 40-39-211 -- with written permission from the school.  (D.E. 36 at PAGEID# 415).  As discussed in her Amended Complaint, Ms. Doe has never requested such permission because knowledge by the school that she is considered a "violent sex offender" would almost certainly create safety risks for her son.  (D.E. 32 at PageID# 324).

The facts discussed by Ms. Doe in her Complaint plausibly demonstrate "how severely Act's requirements interfere in [her] life" and "how [all] of that interference can be attributed to [her] registry status[.]" (D.E. 32 at PageID# 323-325); *Doe v. Lee*, 2021 U.S. Dist. LEXIS 90631, *59 (M.D. Tenn. May 12, 2021).  "Whether [a violation of fundamental rights to direct the education and upbringing of her children] has occurred […] depends *both* on the details of the Act's application to Doe as well as the question of what alternative legislative options the State of Tennessee might have had to address the issue of child safety in a less restrictive manner." *Id.* at 59-60.  Given the absence of any such "details" on the "question of what alternative[s]" might be

available in this case, this Court is not yet equipped with the information necessary to dispose of Ms. Doe's claim for violation of her fundamental right to parent her children and should, therefore, deny Defendants' Motion.

**II-D.    Ms. Doe has properly and sufficiently pleaded her vagueness claim.**

Defendants again attempt to hold Ms. Doe to an improper burden of proof at this stage. However, Ms. Doe has more than sufficiently pleaded this claim with the abundant detail and analysis in her Complaint. (D.E. 32 at PageID# 342 ).

Defendants expired and baseless argument that the Act is a "civil statute" that is "not concerned with criminal conduct" cannot reasonably be viewed as a good faith argument in light of the Sixth Circuit's decision in *Snyder* and the multitude of courts, including this one, which have relied upon *Synder* in holding that the Act – like Michigan's version of the Act in *Snyder* – is "inescapably criminal in nature."  (D.E. 36 at PageID# 418); *John Does #1-#10 v. Lee, Rausch*, 608 F.Supp. 588, 592 (M.D. Tenn. Jun. 22, 2022).

A law is unconstitutionally vague if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or is so standardless that "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). A law "lacking explicit standards is unconstitutionally vague because it allows an unrestricted delegation of power, which 'in practice leaves the definition of its terms to law enforcement officers, and thereby invites arbitrary, discriminatory, and overzealous enforcement." *Leonardson v. East Lansing*, 896 F.2d 190, 198 (6th Cir. 1990); *See also Dambrot v. Central Michigan Univ.*, 55 F.3d 1177, 1183-1184 (6th Cir. 1995) (holding, university offensive speech policy void for vagueness because "defining what is offensive is, in fact, wholly delegated to university officials.")

Defendants have not denied that TBI – through the office of its general counsel – alone determines classification. In fact, Defendants concede that Ms. Doe – and anyone in her position – is "not statutorily involved" in the classification. (D.E. 36 at PageID #419). Whether an out-of-state conviction or underlying conduct will be considered "an act which constitutes the offense of" a qualifying offense under Tennessee law is entirely up to the Defendants. *American-Arab-Anti-Discrimination Comm. V. City of Dearborn*, 418 F.3d 600, 609 (6th Cir. 2005). In other words, the Act unreservedly "leaves the definition of its terms to law enforcement officers." *Id.* This is an "unrestricted delegation of power" which leaves no ordinary person "on fair notice of the standard of conduct for which the citizen is to be held accountable." *Leonardson*, 896 F.2d at 198; *American-Arab-Anti-Discrimination Comm.*, 418 F.3d at 609.

Arguing that individuals known to have never been accused – let alone convicted – of sexual misconduct should nevertheless be required to register as sex offenders for the rest of their lives because it would be "difficult," "cumbersome" and an "administrative burden" is about as perfect an example of "arbitrary" government action as one could possibly imagine. (D.E. 36 at PageID#413); *Leonardson*, 896 F.2d at 198.

Accordingly, Ms. Doe has more than sufficiently pleaded this claim.

**II-E.  Ms. Doe's procedural due process claim is properly and sufficiently pleaded.**

**II-E-1.  Ms. Doe's procedural due process claim is timely.**

**II-E-1-i.  Final decision accrual.**

"The statute of limitations is an affirmative defense, and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim[.]" *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)(citing Fed. R. Civ. P. 8(a), (c)). When reviewing a 12(b)(6) motion, the Court reviews only the claims as alleged in the complaint; thus, a 12(b)(6) motion is typically an

improper vehicle for reaching a determination of whether claims were timely pled. *See, id*; *see also Doe v. Rausch*, No. 3:20-CV-00728, 2022 WL 481240, at *2 (M.D. Tenn. Feb. 16, 2022). When the complaint, however, affirmatively establishes that its claims are time-barred, dismissal may nonetheless be appropriate. *See Cataldo*, 676 F.3d at 547 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007). "When considering a motion to dismiss based on a statute of limitations, the Court must decide whether it is apparent from the face of the complaint that the deadline for bringing the claim has passed." *Doe v. Rausch*, No. 3:20-CV-00728, 2022 WL 481240, at *2 (M.D. Tenn. Feb. 16, 2022). Ms. Doe asserts that the facts as plead (as detailed below) demonstrate that her procedural due process claim is not time-barred; at a minimum, however, dismissal at this stage is not appropriate.

While the statute of limitations period is determined by state law, the question of when the limitations period began to run is governed by federal law. *See Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634-35 (6th Cir. 2007).

Defendants cite two standards of accrual for procedural due process claims. First, they say "the claim accrues under federal law upon *adoption* of the amendment to the Act which Plaintiff challenges." (D.E. 36 PageID# 420) (emphasis added). Then, they cite case law for the proposition that "alleged procedural violations [occur] at the time the challenged requirements were *initially imposed*." *Id.* (emphasis added). Both of these analyses are incorrect as applied to Ms. Doe's claims.

Defendants cite cases in which procedural due process claims were dismissed as time-barred when those claims attacked the retroactive punishment of the Act and its amendments—a frequent corollary to Ex Post Facto claims. (D.E. 36 PageID #420). Ms. Doe's procedural due process claim is of a completely different nature: she alleges the denial of due process in TBI's

classification determination for those with out-of-state convictions—not the retroactive punishment imposed by the Act. She was not denied a classification hearing until October 17, 2023, when TBI sent a letter to Ms. Doe's counsel denying a request for a classification hearing. (D.E. 32-9 at PAGEID# 378). Prior contacts with TBI were to request removal, not a classification determination. (D.E. 32-6 at PAGEID# 370) and (D.E. 32 at PAGEID# 314).

The Sixth Circuit standard accrual of procedural due process claims is found in *Nasierowski Bros. Inv. Co. v. Sterling Heights* wherein the Court held that neither a final judgment or other "finality" was not required when the "allegedly infirm process is an injury in itself." *Nasierowski*, 949 F.2d 890, 894 (6th Cir. 1991). Under *Nasierowski*, a procedural due process claim is "instantly cognizable in federal court without requiring a final decision." *But see Nasierwoski*, 949 F.2d at 898 (Martin, J. concurring, "I note and agree with what other circuits have said in choosing to retail a final decision requirement for procedural due process claims in certain instances.")

This concern with procedural finality continues to appear in Sixth Circuit procedural due process jurisprudence long after *Hammond*. In *American Premier Underwriters, Inc. v. AMTRAK*, the Sixth Circuit left open the question of whether procedural due process claims ultimately do not accrue "until 'a plaintiff is given final notice that she would not receive further process.'" *Am. Premier Underwriters, Inc.*, 839 F.3d 458, 463 (6th Cir. 2016).[4] The Sixth Circuit held that it did not "need to consider whether accrual of a procedural-due-process claims requires 'final notice' of the deprivation of process" because the plaintiffs should have interpreted Amtrak's actions and

---

[4] Despite being designated as NOT RECOMMENDED FOR FULL-TEXT PUBLICATION, this case has been cited by the Sixth Circuit ten times and by district courts 40 times, including this Court.

omissions as "final notice that [they] would not receive [further] process." *Id.* The Court further noted :

> We are unaware of any procedural-due-process cases in which this court has held that "final notice" is required for the statute of limitations to begin to run. To the extent that the "final notice" requirement means that the government agency must issue a final decision before a procedural-due-process claim accrues, the alleged requirement would appear to be in tension with this court's holding in *Nasierowski* that a procedural-due-process claim accrues when process is denied."

*Id.*

The *Nasierowski* standard was rooted in the Sixth Circuit's opinion in *Hammond v. Baldwin* – a ripeness and exhaustion case – wherein the Court distinguished between procedural due process claims that required finality and those which did not. *Hammond,* 866 F.2d 172, at 176. This "analysis hinges on what type of injury is alleged." *Id.* There, the plaintiffs' raised "two distinct injuries": (1) the "allegedly infirm process […] itself; and (2) "a claim that their property has been harmed" as a result." *Id.* The Sixth Circuit held that the first claim was "procedural, and, thus, neither a final judgment nor exhaustion is required," and the second claim was "substantive and, so, a final judgment (but not exhaustion) is required." *Id.*

The question becomes: which of those claims is more like Ms. Doe's claim here? Because Ms. Doe's claim hinges on the deprivation of her liberty interest, her claim is more like the second claim for deprivation of property interest requiring a final decision from Defendants making clear that Ms. Doe "would not receive further process." *Am. Premier Underwriters, Inc.*, 839 F.3d 458, 463 (6th Cir. 2016).

Ms. Doe did not receive that notice until October 17, 2023.[5] (D.E. 32-9 at PAGEID# 378). In contrast, when Defendants responded to Ms. Doe in June 2019, their letter stated, "*Unless your*

---

[5] Accordingly, Ms. Doe's procedural due process claim was likely not ripe before the October 17, 2023, denial letter and the Complaint was amended. Now, however, the claim is timely.

*conviction is overturned or you receive exoneration for your sexual conviction,* the TBI will not respond to any further requests for your termination that you might make." (D.E. 32-6 at PAGEID# 370) (emphasis added). Defendants were likely aware of Ms. Doe's ongoing collateral attacks on her conviction in the criminal case at that time – the existence of which Ms. Doe has detailed but this Court can also take judicial notice. (D.E. 32 at PAGEID# 313-314); *Passa v. City of Columbus*, 123 F. Appx. 694, 697 (6th Cir. 2005); *See also Corl v. Kenan Advantage Grp, Inc*., 2020 U.S. Dist. LEXIS 242709 at *6 (M.D. Tenn. Dec. 28, 2020); *Jackson Cty. Emples. Ret. Sys. V. Ghosn*, 2021 U.S. Dist. LEXIS 109942, *7 (M.D. Tenn. Jun. 11, 2021). When efforts to overturn Ms. Doe's conviction were ultimately unsuccessful, the ACLU-TN sent another termination request to Defendants on her behalf to which Defendants did not respond. (D.E. 32 at PAGEID# 314). Accordingly, Ms. Doe had not received "final notice" that she "would not receive further process" until Defendants plainly said so in their letter on October 17, 2023. (D.E. 32-9 at PAGEID# 378).

Therefore, Ms. Doe's accrual argument is not "in tension" with the Sixth Circuit's holding in *Nasierowski* whose doctrinal ancestor, *Hammond*, provides the appropriate framework to support Ms. Doe's argument that her procedural due process claim did not accrue until October 17, 2023. *Am. Premier Underwriters, Inc. v. AMTRAK*, 839 F.3d 458, 463 (6th Cir. 2016).

### II-E-1-ii.    Continuous violation accrual.

In his concurring opinion in *Nasierowski*, Judge Martin added that finality requirements are not abandoned where "we cannot find a single, concrete separate injury" in the procedural due process claim. *Id.* at 899 (Martin, J. concurring.) This leaves room for continuous violation doctrine.

"'A continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time

ceased their wrongful conduct, further injury would have been avoided." *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009). "[A] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it" within a facially applicable statute of limitations period. *McNamara v. City of Rittamn*, 473 F.3d 633, 639 (6th Cir. 2007). "The limitations period will not bar all actions for all time […] as in certain cases where there is a 'continuing violation…which inflict[s] continuing and accumulating harm…" *Id.* "

"[D]etermining whether a particular § 1983 claim presents a continuing violation depends, in significant part, on the court's determining 'what constitutes the defendant's wrongful conduct' – as identifying the wrongful conduct at issue is central to both the first and third elements of the Sixth Circuit's test." *Robinson v. Purkey*, 326 F.R.D. 105, *146 (M.D. Tenn. Jun. 11, 2018) (internal quotation omitted). "Defining the wrongful conduct, in turn, 'is closely related to the nature of the constitutional protection at issue.'" *Id.*

The facts of *Robinson* resemble, in part, those of this case. In *Robinson*, this Court considered the procedural due process claims against TSDHS and its commissioner brought by plaintiffs whose drivers' licenses had been suspended. *Id.* at 148. Although some plaintiffs' claims were filed more than one year after their suspensions, this Court held that the suspensions constituted an ongoing violation because "their injury has continued to accrue [and] could have been remedied at any time by TDSHS dropping their suspensions." *Id.* at 147.

Here, Ms. Doe suffers the continuing injury from her wrongful, procedure-less classification every single day of her life. This harm is directly traceable to the Defendants continuing refusal to provide her with a classification hearing where she could establish that her conviction for aiding and abetting kidnapping is *not* "an act which constitute the offense of" any

qualifying Tennessee offense requiring registration. The Defendants could have chosen to provide Ms. Doe with a constitutionally required classification hearing at any point since her initial wrongful classification, but they affirmatively decline to do so. Like the plaintiffs in *Robinson*, Ms. Doe is suffering an ongoing violation.

The *Robinson* plaintiffs also argued that letters they received from the Tennessee Department of Safety and Homeland Security after their initial suspensions constituted "fresh deprivations of procedural due process" which reset the clock for statute of limitations. *Id.* This Court held that "plaintiffs have identified no cases suggesting that, when a plaintiff is denied a hearing in violation of due process but the statute of limitations fully runs on her claim, she can state a new claim simply by obtaining a letter from the defendant confirming its position that no such hearing is due." *Id.* First, Ms. Doe has pointed this Court to the "final decision" doctrine in *Hammond*, *Nasierowski*, and *Am. Premier Underwriters, Inc.* Moreover, the letters from TSDHS in *Robinson* were not in response to the plaintiffs' request for a decision but, apparently, a request for confirmation of a previous decision. Therefore, *Robinson* is helpful in understanding why Ms. Doe's procedural due process claim accrued on October 17, 2023.

Defendants complain that Ms. Doe's October 8, 2023, classification request is "an attempt to manufacture" her procedural due process claim. (D.E. 36 at PAGEID# 420). Defendants argue that "[t]o hold otherwise would defeat the purpose of the statute of limitations: to 'close the door' on stale claims." *Id.* Defendants cite *Zdziech v. DaimlerChrysler Corp.* as support of the proposition that Defendants' new denial of due process would improperly and "artificially extend" her claim. (*Id.* at 421). Defendants pulled the following quote and attributed it to the Third Circuit Court of Appeals as the holding from *Zdziech*, "The repeated refusal of employer to reinstate employee to formerly held position 'does not give rise to a new claim of discrimination.'" *Id.*

23

That is *not* the holding in *Zdziech*. The Third Circuit actually held, "The *failure to act* upon receipt of a letter requesting reinstatement is not a discrete act of discrimination […] To permit a person to reset the statutory requirements for the timely filing of a complaint *merely by writing a new letter* to his former employer would clearly vitiate the intent behind the 300-day time limit." *Zdziech v. DaimlerChrysler Corp.*, 114 Fed. App'x 469, 471 (3ʳᵈ Cir. 2004) (emphasis added). The employer did not answer the request. Here, Defendants affirmatively denied Ms. Doe's request. Also, a discrimination claim and a procedural due process claim are not the same. Refusal to provide a classification hearing is a procedural due process violation under these circumstances. Refusal to return a disabled employee to work is not necessarily a prohibitively discriminatory act in the same way the original placement of the employee on disability leave might have been.

Further, T.B.I is not even empowered by the Act to make a classification determination. The Act empowers T.B.I, and Director Rausch as Defendants outline (D.E. 20 at PageID #172), to perform a number of tasks related to the registry:

- receiving and maintaining the information supplied by registrants in a centralized database, the state's sex offender registry, *see* Tenn. Code Ann. § 40-39-204(a) &(d); Tenn. Code Ann. § 40-39-206(a); Tenn. Code Ann. § 40-39-202(22).

- promulgating rules establishing standardized specifications for the photograph of the offender, *see* Tenn. Code Ann. § 40-39-203(19)(B);

- designing, printing, and distributing registration forms, *see* Tenn. Code Ann. § 40-39-205(a);

- keeping offenders informed of the registration, verification, tracking requirement, and sanctions under the Act, *see* Tenn. Code Ann. § 40-39-205(f);

- notifying law enforcement when an offender is not in compliance with the Act, *see* Tenn. Code Ann. § 40-39-206(b);

- establishing a hotline, *see* Tenn. Code Ann. § 40-39-206(d);

- processing offender requests to be removed from the registry, *see* Tenn. Code. Ann. § 40-39-207(a)(1).

- removing data pertaining to deceased offenders from the SOR, *see* Tenn. Code. Ann. § 40-39-210.

None of these tasks involve determining whether a conviction under Tenn. Code Ann. §40-39-202(1) requires registration. The Act states that it is the responsibility of the "offender" to register with T.B.I. after their release after conviction. Tenn. Code Ann. § 40-39-203(a). T.B.I. is only empowered to review requests for termination. *See* Tenn. Code Ann. §40-39-207. Defendants' *ultra vires* action continuously violates the right of Ms. Doe's, and others like her, to procedural due process.

Therefore, Ms. Doe submits that her procedural due process claim is still timely under Sixth Circuit law due to the Defendants' continuous violation.

### II-E-2.    Even if untimely, this Court should toll the statute of <u>limitations for Ms. Doe's procedural due process claim</u>.

This Court should also equitably toll the statute of limitations to the extent necessary for Ms. Doe's as-applied procedural due process claim to be considered timely in the Court's view.

### II-E-2-i.    Availability of Tolling.

"State time limitations are only applicable to § 1983 claims insofar as they are consistent with federal law and policy." *Budget Charters, Inc. v. Pitts,* 2017 U.S. Dist. LEXIS 188016, *16, (M.D. Tenn. Nov. 14, 2017) (citing *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005)). "Accordingly, a number of courts have held that, in the context of § 1983, 'a body of state tolling law that lacks a provision for equitable tolling is inconsistent with the provision of a complete federal remedy…and therefore is overridden by the federal doctrine.'" *Id.* (internal quotation omitted).

Defendants argue that Ms. Doe's claim is untimely because "Tennessee's tolling rules [are not] 'inconsistent with federal law or policy.'" (D.E. 36 at PAGEID# 421). In support of this otherwise unsupported conclusion, Defendants attempt to offer analysis of the comparative "state and federal policies" which the "respective legislatures sought to foster." (*Id.* at 421-422). This analysis is unnecessary. Whether Tennessee's tolling law is inconsistent with federal law is not a mystery, as this Court has previously held, "Tennessee's own Supreme Court has acknowledged that Tennessee's lack of equitable tolling represents a *departure* from the principles embodied in federal law." *Budget Charters, Inc*, 2017 U.S. Dist. LEXIS 188016 at *17 (citing *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (emphasis added). For reasons not obvious, Defendants cite *Redwing* for the exact opposite proposition.

In *Bishop v. Children's Ctr. For Developmental Enrichment*, the district court had dismissed a minor plaintiff's Rehabilitation Act and § 1983 claims as barred by the two-year statute of limitations applicable under Ohio law. *Bishop v. Children's Ctr. For Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010). Ohio had statute that provided "if a person [was] within the age of minority at the tine his claim accrued, he may bring the claim within the statutory period after the disability was removed." *Id.* at 537. The Sixth Circuit reversed and held that Ohio's tolling statute was *consistent* with the goals of § 1983 – a holding in stark contrast to Defendants' assertion that Tennessee's *lack* of tolling is somehow consistent with federal policy. *Id.* 537-538.

The "deterrence" goal of § 1983 is also characterized as "prevention of abuses of power by those acting under color of state law." *Leaman v. Ohio Dep't Of Mental Retardation & Developmental Disabilities*, 825 F.2d 946, 959 (6th Cir. 1987) (citing *Robertson v. Wegmann*, 436 U.S. 584, 591 (U.S. 1978)). That is precisely the relief Ms. Doe seeks under her procedural due process claim, as well as her other claims.

26

Defendants counter this plainly obvious connection between Ms. Doe's claim and the goal of § 1983 by arguing that her success would be "unlikely to deter" them"[I]f the official knows an act is unconstitutional, the risk that he or she might be hauled into court indefinitely is *more likely* to check misbehavior than the knowledge that he or she might escape a challenge to that conduct within a brief period of time." *Hardin v. Straub*, 490 U.S. 536, 543 (1989) (emphasis added).

Defendants then suggest that the federal policy for § 1983 of "deterrence would not be "affected" by this Court declining to apply federal tolling to Ms. Doe's claim because "*plaintiffs* can still readily enforce *their* claims, thereby…fostering deterrence, simply by commencing *their* actions within' the statute of limitations." (D.E. 36 at PAGEID# 422). This tortured logic completely sidesteps the proper analysis, which requires looking at the impact of applying the state law to *Ms. Doe's* claim, not hypothetical plaintiffs.

Defendants argue that Ms. Doe has not diligently pursued her rights because she "failed to challenge her classification or registration requirements" through judicial review in the Chancery Court pursuant to T.C.A. § 40-39-207(g). (D.E. 36 at PAGEID# 423-424). This is the third time Defendants have made this incorrect statement of law. Chancery review does not reach the propriety of an offender's' initial classification and only addresses the request for termination. Moreover, Ms. Doe is not even eligible for termination under T.C.A. § 40-39-207(g) as a lifetime registrant, and even if she were only classified as a "sexual offender" she would not be eligible until 2026. For all these reasons, chancery review would be futile. This is why – as has been discussed and Defendants cannot seriously contest – Ms. Doe was challenging her conviction through the criminal case until February 2021. (D.E. 32 at PAGEID# 314). This is also why Defendants left open the possibility of her removal upon exoneration or overturning of her conviction. (D.E. 32-6 at PAGEID# 370).

### II-E-2-ii.  Propriety of Tolling.

Although the Sixth Circuit has identified "five factors to consider when determining the appropriates of equitably tolling a statute of limitations" – including: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement" – not all of the "considerations [will] be material in all cases." *Truitt v. Cty. Of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

Here, Ms. Doe actively pursued relief through collateral attacks in the criminal case up until early 2021. Further, Defendants have not and cannot point to any prejudice they would suffer from equitable tolling in the event this Court believes Ms. Doe does not suffer from ongoing injury.

### II-E-3. Ms. Doe's procedural due process claim is sufficiently pleaded.

Citing *Connecticut Dept. of Public Safety v. Doe*, 538 U.S.1 (2003), Defendants argue that Ms. Doe "has not alleged any fact that she seeks to establish in a pre-deprivation hearing that is relevant under the statutory scheme." (D.E. 36 at PageID# 187). But she has.

Ms. Doe specially stated in her Amended Complaint, "Neither Ms. Doe – nor any similarly situated person – has an opportunity under the Act to establish that their conviction and/or underlying conduct is not "an act which constitutes the offense of" any of the specifically enumerated, qualifying Tennessee offenses". (D.E. 32 PageID# 340-4341). In other words, whether the conviction or underlying conduct *is* such a qualifying act is what Ms. Doe would seek to contest at a classification hearing. Defendants appear to argue that this is not a sufficient allegation because "the State has drawn classifications based on the fact of conviction alone." (D.E. 36 at PageID# 423). This is simply not true. In fact, Defendants have previously explicitly

28

*denied* that a registrant's classification is based only on the offense of conviction. (D.E. 32 at PageID# 319-320).

Relying solely on Defendants previous denial of that fact is not necessary, however, because if it were true that Defendants relied on Ms. Doe conviction alone, she would clearly only be classified as a "sexual offender" not a "violent sexual offender." *See* Tenn. Code Ann. ¶ 40-39-202(20)(A)(vi). Therefore, it is actually beyond dispute that Defendants rely on more than the conviction alone in making a classification decision, which precludes reliance on *Connecticut* as a bar to Ms. Doe's procedural due process claim.

## Conclusion

For at least all of these reasons, this Honorable Court should deny Defendants any relief on their Motion to Dismiss.

Respectfully submitted:

/s/ Davis Griffin
Davis Fordham Griffin, Esq.
TBPR #34555
MOCKINGBIRD LAW GROUP, PLLC
P.O. Box 282218
Nashville, TN 37208
davis@mockingbirdlaw.com
615-280-0899

/s/ Stella Yarbrough
Stella Yarbrough, BPR # 033637
Lucas Cameron-Vaughn, # 038451
Jeff Preptit, # 038451
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
syarbrough@aclu-tn.org

lucas@aclu-tn.org
jpreptit@aclu-tn.org

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing has been served via the Court's electronic filing system this 20th day of November 2023 on the following:

CODY N. BRANDON (BPR# 037504)
Managing Attorney
Assistant Attorney General
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
Cody.Brandon@ag.tn.gov

DAVID WICKENHEISER (BPR# 040427)
Assistant Attorney General
Law Enforcement and Special Prosecutions Division
Office of the Tennessee Attorney General and Reporter
P.O. Box 20207
Nashville, Tennessee 37202-0207
David.Wickenheiser@ag.tn.gov

s/ Davis F. Griffin
Davis Fordham Griffin
